RICHARD F. HELMS v. CITY OF CHARLOTTE, A MUNICIPAL CORPORATION, AND C. W. EDGE, CHIEF BUILDING INSPECTOR.

(Filed 22 November, 1961.)

1. Municipal Corporations § 25—
   A municipal zoning ordinance is valid if it is enacted pursuant to statutory authority, has a reasonable tendency to promote the public safety, health, morals, comfort, welfare, or prosperity, and if its provisions are not arbitrary, unreasonable or confiscatory.

2. Municipal Corporations § 26—
   A municipal zoning ordinance will be presumed valid, with the burden upon the complaining property owner to show invalidity or inapplicability.

3. Municipal Corporations § 25—
   The mere fact that the value of property is depreciated by a zoning restriction does not, standing alone, establish the invalidity of the ordinance.

4. Municipal Corporations § 26—
   Where divergent conclusions may be reasonably entertained as to whether a municipal ordinance is unreasonable, arbitrary, or discriminatory the question should be resolved in favor of the validity of the ordinance, since a court will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question.

5. Municipal Corporations § 25—
   Where change of a zoning regulation has been advertised for two successive weeks in a newspaper printed in the municipality, the statutory notice is sufficient, G.S. 160-176, and the contention that the statutory

notice did not meet the requirements of due process because no notice was served on the property owners, that plaintiff had no actual knowledge of the hearing, and that the advertisement, although giving a boundary description of the area proposed for rezoning, did not refer to plaintiff's property by lot number or by reference to a recorded map, is untenable.

**6. Municipal Corporations § 34; Estoppel § 5—**

The fact that a municipal official issues a permit for a non-conforming use after the enactment of a zoning ordinance does not estop the municipality from enforcing the ordinance.

**7. Municipal Corporations § 25—**

It is not a prerequisite to the validity of a zoning ordinance that the zoning district lines should coincide with property lines.

**8. Same—**

A municipal zoning ordinance is confiscatory and invalid in its application to a particular lot if it is practically impossible to use such lot for the purpose permitted by the ordinance so that the ordinance renders such property valueless for practical purposes.

**9. Same; Municipal Corporations § 34—**

Plaintiff's property was rezoned from an industrial to a residential district. The court found upon supporting evidence that a residence could be built upon the property in conformity with the municipal regulations but did not find whether, if such house were constructed, the value of the house and lot would be more or less than the cost of constructing such a residence. *Held:* There being no finding or conclusion as to whether the land had any reasonable value for the permitted use and that such use was practical, judgment sustaining the validity of the ordinance is not supported by the findings.

**10. Appeal and Error § 49—**

Where the court fails to find an ultimate material fact, the cause must be remanded for definite findings sufficient to support a judgment.

APPEAL by plaintiff from *McLean, J.,* June 19, 1961, Civil "B" Term of MECKLENBURG County.

This is an action by plaintiff to have a zoning ordinance of the City of Charlotte declared invalid as to lots owned by him, and for writ of mandamus requiring defendants to issue a building permit for construction of a small office building on his lots.

The parties waived trial by jury and agreed that the court might find the facts from the evidence and stipulations of the parties.

The findings of fact by the court are summarized as follows (numbering ours):

(1). On 8 July 1957 plaintiff purchased from W. Erdmond Love lots 1 and 2 in block 3 of Greenville Heights. In 1951 the City of Charlotte adopted a comprehensive zoning ordinance for the City, and the property now owned by plaintiff was thereby located in an

"Industrial District" in which the operation of an oil distribution business was permissible.

(2). On 26 January and 2 February 1957, the City advertised in the Charlotte News, a newspaper of general circulation in the City, a public hearing on proposed ordinance No. 368 for change of zoning from "Industrial" to "Residence 1" affecting a specified area on both sides of Oaklawn Avenue and west of Irwin Creek. This area includes plaintiff's property, but the advertisement did not refer to it "by reference to lot and block number, or to any map of record." On 20 February 1957 the proposed ordinance was adopted. Neither Mr. Love nor plaintiff had any personal notice or actual knowledge of the public hearing or adoption of the ordinance.

(3). From 1947 to 1957 there were, and still are, many business establishments located on Oaklawn Avenue east of Irwin Creek and in an "industrial district," and the territory on Oaklawn Avenue west of Irwin Creek to within 200 to 300 feet of Beaty's Ford Road (a distance of 7 or 8 blocks) had no business establishments located thereon, except a city cemetery and city cemetery office. (Irwin Creek crosses lot 2 of plaintiff's property.)

(4). In July 1957 the surface of plaintiff's lots was 6 to 8 feet below the surface of Oaklawn Avenue. The lots are located as shown on maps offered in evidence. Irwin Creek is 22 feet wide, "its banks extend approximately 36 feet west of the center of said creek," and at the time of the 1957 zoning change surface drainage from Oaklawn Avenue entered upon plaintiff's property.

(5). Before the sale to plaintiff, Mr. Love obtained a permit for industrial use of the lots but did not make use of the permit. On 23 July 1957, after consulting the Chief Building Inspector, plaintiff obtained from the City a permit to "bury oil tanks" on the lots, and pursuant to the permit the lots were filled in to street level and the tanks were "buried" thereon at a cost of approximately $5,500.00. Thereafter plaintiff applied for a permit to construct an 8 by 10 office building on the lots to be used in connection with his intended oil distribution business. The permit was denied on the ground that the property was zoned "Residence 1." Plaintiff then petitioned for a rezoning of the lots to conform with his intended use. The petition was denied. The lots are worth about one-third as much for residential as for industrial use.

(6). The City's zoning ordinances provide that: (a) No building shall be erected (on any lot) which does not comply with building and area regulations; (b) buildings in "Residence 1" districts shall be constructed on lots having a minimum of 7,500 square feet of lot area for each dwelling, unless the size of a lot of less area has been

fixed by recorded map or deed prior to the adoption of the zoning ordinance for the City of Charlotte on the 14th day of January, 1947, in which case a minimum of 5,000 square feet of lot area for each dwelling; (c) in "Residence 1" districts, for each main building there be a front yard of 25 feet minimum depth, a rear yard of 30 feet minimum depth or of a minimum depth of 20% of the average depth of the lot if the lot is less than 150 feet deep, and a side yard on each side of the main building of the minimum depth of 6 feet — "the aggregate width of the two side yards shall not be less than" 20% of the average width of the lot.

(7). The City's building code requires the following minimum areas (in square feet): Principal room, 150; first bedroom, 100; other bedrooms, 70; kitchen and dining room, 100. Baths are required, and no room shall be less than 7 feet in width.

(8). Plaintiff can build upon his lots in compliance with zoning and building code requirements a residence having a minimum square footage on the first floor in excess of 390 square feet, and including a principal room, 150 square feet, bedroom, 100 square feet, dining room and kitchen, 100 square feet, bathroom 40 square feet. A second floor could be added. Plaintiff has never requested a variance permit under the zoning ordinance of the City of Charlotte for a partial waiver of front, rear or sideline set-back provisions.

The court concluded as a matter of law: (1) Zoning ordinance No. 368 was validly adopted, and this ordinance and G.S. 160-175 and G.S. 160-176 are in full force and effect and are "presumed to be constitutional"; (2) the advertisements in the Charlotte News were sufficient to reasonably notify property owners of the public hearing on Ordinance No. 368; (3) plaintiff can build a residence in accordance with the zoning ordinance and building code on the lots in question; and (4) the burden of proof on the issues raised by the pleadings and evidence was upon plaintiff, and plaintiff failed to carry the burden.

The court entered judgment denying the relief prayed by plaintiff, and dismissing the action.

Plaintiff appealed and assigned errors.

*John G. Newitt for plaintiff.*
*John D. Shaw and John T. Morrisey, Sr., for defendants.*

MOORE, J. As a general rule a zoning ordinance of a municipality is valid and enforceable if it emanates from ample grant of power by the Legislature to the city or town, if it has a reasonable tendency to promote the public safety, health, morals, comfort, welfare and prosperity, and if its provisions are not arbitrary, unreasonable or

confiscatory. "But there is always a marginal area where it is difficult to say that the preference of the public interest over private interest opposing zoning is reasonable and constitutional. In this marginal area each case must be determined on its own facts." McQuillin: Municipal Corporations, Vol. 8, s. 25.43, pp. 96, 97. When it is shown that a zoning ordinance has been adopted by the governing board of a municipality, there is a presumption in favor of the validity of the ordinance and the burden is upon the complaining property owner to show its invalidity or inapplicability. *Raleigh v. Morand,* 247 N.C. 363, 100 S.E. 2d 870.

The mere fact that a zoning ordinance seriously depreciates the value of complainant's property is not enough, standing alone, to establish its invalidity. "When the most that can be said against such ordinance is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere. In such circumstances the settled rule seems to be that the court will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining whether its action is in the interest of the public health, safety, morals or general welfare." *In re Appeal of Parker,* 214 N.C. 51, 55, 197 S.E. 706.

Plaintiff contends that Ordinance No. 368 of the City of Charlotte, which purports to change the classification of the greater part of the area of his lots from "Industrial" to "Residence 1," is invalid and ineffective for the reason that it was adopted without notice and opportunity to be heard or with "such limited notice that due process of law has not been observed."

The only notice of a public hearing on the proposal to adopt Ordinance No. 368 was two publications in the Charlotte News, one on Saturday, January 26, 1957, and the other on Saturday, February 2, 1957, for a hearing to be held February 13, 1957. No notice was served on Mr. Love, the then owner of lots 1 and 2 in block 3 of Greenville Heights. Neither he nor plaintiff had any actual knowledge of the public hearing or the adoption of the ordinance. The advertisements gave a boundary description of the area proposed for rezoning but did not refer to plaintiff's property by lot and block number or by reference to a map. The owner was not named in the publications.

No zoning "regulation, restriction or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. A notice of such public hearing shall be given once a week for two successive calendar weeks in a newspaper published in such municipality. . . ." G.S. 160-175. ". . . (R)egulations, restrictions and boundaries may from time to time be amended, supplemented, changed, modified or

repealed. . . . The provisions of the previous section relative to public hearings and official notice shall apply equally to all changes or amendments." G.S. 160-176.

Plaintiff does not suggest that the statutory requirements for giving notice were not complied with. He insists that the notice required by the statute is insufficient and does not meet the requirements of due process. We do not agree. This identical question was before the Virginia Court in *Blankenship v. City of Richmond,* 49 S.E. 2d 321 (Va. 1948). The Virginia statute is in all material particulars similar to ours. Michie's Code (Va. 1942), ss. 3091(4), 3091(5). Notice of a public hearing on a proposed amendment to the zoning ordinances was given by advertisement in a local newspaper. The Court held the notice sufficient and stated: "The fact that the complainants did not see the notice certainly cannot affect the validity of the ordinance in question when everything required by the statute was done before its adoption. It is a matter of almost daily occurrence that rights are affected and the status of relationships is changed upon the giving of similar notice, but no one may successfully contend that acts predicated upon such notice are rendered invalid because persons affected did not see the notice in the newspaper." This is in accord with the prevailing majority view throughout the country. See *Walker v. Elkin,* 254 N.C. 85, 118 S.E. 2d 1; *Braden v. Much,* 87 N.E. 2d 620 (Ill. 1949). The case of *Walker v. City of Hutchinson, Kansas,* 77 S. Ct. Rep. 200 (1956), relied on by plaintiff, relates to a materially different statutory requirement and is readily distinguishable.

An official of the City of Charlotte mistakenly issued to plaintiff a permit to install subterranean oil tanks on the property in question five months after the adoption of Ordinance No. 368. In exercising the purported privilege thus conferred, plaintiff incurred expense of approximately $5,500.00. These facts do not estop the City of Charlotte from insisting upon the enforcement of the ordinance. A municipality cannot be estopped to enforce a zoning ordinance against a violator by the conduct of its officials in encouraging or permitting the violation. *Raleigh v. Fisher,* 232 N.C. 629, 635, 61 S.E. 2d 897, and cases there cited.

Irwin Creek crosses the east end of plaintiff's lot 2. The Creek is one of the boundaries of the district described in Ordinance No. 368. A part of the description is: ". . . thence in an easterly direction with said margin (of Oaklawn Avenue) . . . to Irwin Creek; thence in a southerly direction with the Creek about 1350 feet. . . ." Thus the middle or thread of the stream is the boundary of the district described in the Ordinance in question. *Rose v. Franklin,* 216 N.C. 289, 291, 4 S.E. 2d 876. Therefore, that portion of lot 2 of plaintiff's property

lying to the east of the center of Irwin Creek is in an "industrial" district. Lot 1 and the remainder of lot 2 are situate within the area described in Ordinance No. 368. But it is not a prerequisite for the validity of a zoning ordinance, and it is not required by statute, that zoning district lines coincide with property lines. *Penny v. Durham,* 249 N.C. 596, 600, 107 S.E. 2d 72; *Ciaffone v. Community Shopping Center,* 77 S.E. 2d 817 (Va. 1953).

Finally, plaintiff contends that Ordinance No. 368 involves the destruction of all practical use and value of his lots, and as to his property the ordinance is void. It is his contention that the findings of fact and conclusions of law by the court, insofar as they relate to the practicality of the use of the lots for residential purposes under the provisions of the zoning ordinances and building code of the City of Charlotte, and other pertinent facts and circumstances, are insufficient to support the judgment.

"It is a general rule that zoning connot render private property valueless. The burdens of government must be equal. In other words, if the application of a zoning ordinance has the effect of completely depriving an owner of the beneficial use of his property by precluding all practical uses or the only use to which it is reasonably adapted, the ordinance is invalid. . . . A zoning of land for residential purposes is unreasonable and confiscatory and therefore illegal where it is practically impossible to use the land in question for residential purposes." McQuillin: Municipal Corporations, Vol. 8, s. 25.45, pp. 104, 105.

*Oschin v. Redford Township,* 24 N.W. 2d 152 (Mich. 1946) involves an unplotted strip of land fronting on a street 540 feet and having a depth of 36 feet. In 1940 a fence was built around the property and a steel shed was erected thereon. The property was used for lumber storage until 1944. Plaintiffs acquired the property in 1945 and opened a lumber and building supply business thereon the same year. The plaintiffs were notified that such use of the property would be prohibited by reason of a township zoning ordinance adopted in 1942 which included this property in a residential district. The zoning ordinance provided for a front yard as to residence property of a minimum depth of 25 feet and for a rear yard minimum depth of 20 feet for a one-story building and of 25 feet for a two-story building. The ordinance also provided for discretionary variations or waivers of set-back requirements with respect to dwellings. At the trial, to illustrate the alleged utility of the property for residential purposes, defendant offered in evidence a sketch or drawing providing a living room, kitchen, bedroom, bathroom and bed closet, and a front yard having a depth of 15 feet, and a rear yard having a depth of 9 feet. A witness testified: "In my opinion a house of that type would be salable. There are

numerous people who would like to have single bedroom homes. . . .
You could add another bedroom and a full sized . . . (bath) and you
might be able to work out a three bedroom affair." The trial court
enjoined the enforcement of the ordinance, and the Supreme Court
affirmed, saying:

> "Defendant township did not tender to plaintiffs any modifi-
> cation of its zoning ordinances that would permit a building such
> as that described by witness . . . to be erected. (Citation of au-
> thority). It appears to us that such a building would be out of
> line with other buildings in the locality, if it had been per-
> mitted. We further find the proposed residential use is impracti-
> cal, and that the building described by witness . . . would be
> unsightly.
>
> "It is practically impossible to use the lands in question for
> residential purposes. We find that the zoning ordinances as ap-
> plied to the property in question are unreasonable and confiscatory
> and therefore illegal."

For cases involving property bisected by zoning district lines and
of which portions were rendered valueless for permissible uses, see
*Hecht-Dann Construction Co. v. Burden*, 208 N.Y. Supp. 299 (1924)
and *Buffalo Park Lane Inc. v. City of Buffalo*, 294 N.Y. Supp. 413
(1937).

In the instant case plaintiff's deed to lots 1 and 2, block 3, of Green-
ville Heights refers to a recorded map for description. According to
the recorded map lot 1 has a frontage of 41 feet on Oaklawn Avenue,
its western side line is 45 feet, its eastern side line is 59 feet, and the
back line is 40 feet. The map shows that lot 2 has a frontage of 51
feet on Oaklawn Avenue, its western side line is 59 feet, its eastern side
line is 73 feet and the back line is 77.5 feet. The side lines are not
perpendicular to Oaklawn Avenue. Therefore, the lengths of the side
lines are not indicative of the depth of the lots. The depth of the lots
is relatively less than sideline measurements. At the time of the pass-
age of the ordinance in February 1957 the surface of the lots was 6
to 8 feet below the surface of Oaklawn Avenue. Irwin Creek is a large
drainage creek and at this property its normal bed is 22 feet wide.
It has sloping banks and the top of the bank on the west side is ap-
proximately 36 feet from the center of the stream. Prior to the filling
in of the lots in July or August 1957 surface water ran from the
Avenue onto the lots. The sloping banks of the Creek were not filled
in. G.S. 77-14. There is now a concrete drain or flume 18 feet long
and 5 to 8 feet wide, crossing the northeast corner of lot 2, through
which the water is drained from the Avenue into the Creek. The

Creek and Creek bank apparently occupy in excess of one-fourth of the area of lot 2. In rainy seasons the Creek rises and on occasion the water has been as high as the Avenue bridge.

By agreement of the parties the court ordered that "the City Engineering Department . . . make an actual survey of the property and . . . prepare an accurate map" for use at the trial. The city surveyor did not find any iron stakes or other monuments at the lot corners, but he found an iron corner in another part of Greenville Heights. Assuming the correctness of its location and using it as a control point, he surveyed the lots and made a map. According to this map the depth of the lots is approximately 6 feet more than is shown on the recorded map to which plaintiff's deed refers. Whether the adjoining lot owners would consider this added depth an encroachment does not appear.

By either map the total area of both lots is less than 7,500 square feet. Excluding the Creek and "the sloping edge of the bank," the "lot area remaining of lot 1 and 2 . . . figures 3,075 square feet," according to the testimony of the city surveyor. If the sloping edge of the bank is added, it is apparent that the total lot area west of the Creek is less than 5,000 square feet. The zoning ordinance provides that in "Residence 1" districts "There shall be a minimum of . . . 7,500 square feet of lot area for each dwelling, unless the size of the lot area has been fixed by recorded map or deed prior to the adoption of the zoning ordinances . . . on the 14th day of January 1947, in which event" there shall be "a minimum of 5,000 square feet of lot area for each dwelling designed for not more than two families." Under these provisions lots 1 and 2, even when considered as one area, do not qualify for residential use. The City Board of Adjustment may, of course, vary these requirements in cases of practical difficulty and hardship "so that the spirit of the ordinance shall be observed, public safety and welfare served and substantial justice be done." G.S. 160-178. It does not appear in evidence when the areas of lots 1 and 2 were fixed "by recorded map or deed," but it is clear that the areas were fixed either before there was a zoning ordinance or while the property was in an "Industrial" district. It would seem, from the sizes, shapes, and nature of the lots, they were laid out for business rather than residential uses.

Plaintiff offered in evidence a map showing lot dimensions in accordance with the recorded map to which plaintiff's deed refers, showing required set-backs, and purporting to show that the only practical building that could be erected thereon would be 59 feet long and 13 feet wide for most of the distance but only 9 feet wide at the west end. Defendant offered in evidence a map showing lot dimensions in accordance with the city survey, showing required set-backs, and

HELMS *v.* CHARLOTTE.

purporting to show a floor plan for a house 48 feet long and of three widths varying from 20 feet to 17 feet, containing 3 rooms. This floor plan presents a shot-gun type house with a straight front and irregular rear and with the three rooms side by side. The plan entails a foundation and roof variation for each room. Neither floor plan takes into consideration wall thicknesses. The building code fixes minimum areas for rooms in dwellings (in square feet) as follows: Principal room, 150; first bedroom, 100; other bedrooms, 70; kitchen and dining room, 100. No room to be less than 7 feet in width, and baths to be provided.

The court found as a fact that plaintiff can build on the lots in compliance with zoning and building code requirements a residence having "a minimum square footage on the first floor of in excess of 390 square feet," containing three rooms and a bath, that a second floor could be added, and that plaintiff had never requested a variance permit relating to set-back requirements. The court concluded as a matter of law that "plaintiff can build a residence in accordance with the zoning Ordinance . . . and the Building Code. . . ." Even so, the real issue raised by the pleadings and the evidence remains unanswered. This is the real question for decision: Is it practical to use the lots for residential purposes and do they have any reasonable value for residential use under zoning regulations, the building code and other pertinent circumstances?

The answer to the crucial question involves many things. There is evidence that there are many business establishments along Oaklawn Avenue from Irwin Creek eastwardly, and none for several blocks west of the Creek, but there is a city cemetery and cemetery office along the Avenue west of the Creek. There is also evidence that Oaklawn Avenue is a truck route. There is no evidence as to the sizes of other lots or as to the size and character of residences, if any, in the district in the vicinity of the lots in question. There is a picture in evidence showing one residence, a large and commodious two-story frame dwelling. There was the following testimony at the trial relative to the lots and the surrounding area: "To the south of those lots there is a big open field with high grass. It is low land. . . . In 1957 it was just a rough undeveloped section of the city. There are stores east of that. I would describe it as industrial use. . . . The cemetery is right beyond it. . . . I am not an architect or engineer, it has been my job to make up cost analysis controls, estimates on various houses and what not, it is my opinion if you did build a house on this lot it would have to be a unique design, unique construction and it would in my opinion . . . (be) a slum breeder because it would be . . . too small, unless it was two story. . . . It is foul land. . . ." The effect of any variance permits with respect to area and set-back should be con-

sidered both as to the enlargement of use and desirability of variances. It is possible that, if a residence was erected on the lots, upon completion the market value of the house and lots would be less than the cost of constructing the residence. In such case the lots would be valueless for residential purposes. There is also the consideration as to whether an unsightly and out-of-line residence would be less injurious to nearby property than a business establishment.

The findings of fact and conclusions of law with respect to the indicated question do not support the judgment on this issue. The court found that a residence could be built, but it did not find that it would be practical, desirable and of reasonable value. In short, the court did not find that the lot had any reasonable value for residential use and that such use was practical.

When jury trial is waived and it is agreed that the judge may find the facts, the court must make findings sufficient to support its judgment as to each determinative fact in dispute. *McMillan v. Robeson,* 225 N.C. 754, 36 S.E. 2d 235. Where the court fails to find an ultimate material fact, the case must be remanded for definite findings sufficient to support a judgment. *Jamison v. Charlotte,* 239 N.C. 423, 79 S.E. 2d 797.

This cause is remanded with direction that the court hear evidence and determine whether or not the lots in question are, under all the circumstances, practical and of any reasonable value for residential use.

Error and remanded.