S. A. SCHLOSS, JR., FLORETTE SCHLOSS WILE AND MARY JANE SILVERMAN, PARTNERS, TRADING AS SCHLOSS POSTER ADVERTISING COMPANY v. W. H. JAMISON, SUPERINTENDENT OF BUILDING INSPECTION FOR THE CITY OF CHARLOTTE, AND THE CITY OF CHARLOTTE, A MUNICIPAL CORPORATION.

(Filed 12 June 1964.)

1. **Constitutional Law § 15; Municipal Corporations § 25—**

   The original zoning power of the State reposes in the General Assembly, and municipalities can exercise such power only to the extent and within the limitations of statutes delegating to them the legislative power in this respect. G.S. 160-172 *et seq.*

2. **Municipal Corporations § 25—**

   A zoning ordinance must bear a substantial relation to the public health, safety, morals or general welfare.

**3. Same—**

Municipalities have been delegated power to adopt comprehensive zoning ordinances, and where such an ordinance regulates all types of business advertising solely with reference to the various zones and not with regard to billboards or poster panels as such, the regulation relates to the zoning power and not to the power to regulate the erection of billboards, signs, and other structures under G.S. 160-200(9).

**4. Municipal Corporations § 34—**

A zoning ordinance duly enacted by a municipal corporation is presumed to be a valid exercise of the police power and the burden is upon a property owner asserting invalidity to establish it.

**5. Same;   Municipal Corporations § 25—**

If a zoning ordinance is adopted in the proper exercise of the police power any resultant loss to property owners is a misfortune imposed upon them as members of society and does not affect the validity of the ordinance.

**6. Municipal Corporations § 25—Zoning ordinance may prohibit signs advertising goods, services or entertainment not offered on premises.**

Where a comprehensive zoning ordinance of a municipality permits in the main business district signs directing attention to businesses conducted and services or entertainment offered on the premises, but prohibits signs directing attention to commodities, services or entertainment sold or offered elsewhere, the fact that the ordinance results in prohibiting the operation of plaintiff's billboard advertising business in such zone does not constitute arbitrary and unlawful discrimination even though there is no physical difference in the types of signs, since the distinction is based upon a reasonable classification and the prohibition of the billboard advertising business within the zone is impartial, reasonable and valid because such business is inconsistent with and unrelated to the activities and businesses permitted in the zone, irrespective of any question of whether the signs and billboards are a menace to life or a detriment to the public safety.

APPEAL by defendants from *Riddle, Special Judge,* November 4, 1963, Schedule "C" Civil Session of MECKLENBURG.

Plaintiffs' action is for a permanent injunction. Order restraining defendants *pendente lite* was affirmed by this Court in *Schloss v. Jamison,* 258 N.C. 271, 128 S.E. 2d 590. At final hearing, upon waiver of jury trial, Judge Riddle heard the evidence and, after stating his findings of fact and conclusions of law, entered judgment permanently enjoining defendants "from enforcing Chapter 23 of the Code of the City of Charlotte against the plaintiffs, as said chapter relates to the plaintiffs' advertising signs as defined in said ordinance in the B-3 business district." Defendants excepted and appealed.

*Hunter M. Jones and James O. Cobb for plaintiff appellees.*

*John T. Morrisey, Sr., for defendant appellants.*

Bobbitt, J.  Evidence was offered by plaintiffs and by defendants. The court's findings of fact cover sixteen pages of the record. Facts established by unchallenged findings may be summarized as follows:

On January 29, 1962, the City Council of Charlotte adopted a new and comprehensive zoning ordinance. This ordinance, which became effective January 30, 1962, is now identified as Chapter 23 of the Code of the City of Charlotte. It establishes within the corporate limits of the City of Charlotte and its "Perimeter Area" three "Residential Districts," two "Office Districts," three "Business Districts," and three "Industrial Districts."

The ordinance states the plan or purpose with reference to each district and defines the permitted uses therein. It provides that no building, structure or land shall be used "unless in conformity with all the regulations of this Ordinance for the District in which it is located, except as otherwise provided herein." It makes a violation of any of its terms a misdemeanor.

The ordinance prescribes the classes of signs *permitted* on premises in the various residential, office, business and industrial districts. Identification signs are permitted in *all* districts. Business signs are permitted in *all* (three) business and in *all* (three) industrial districts. Advertising signs are permitted in *all* (three) industrial districts and in "B-2 General Business District." Advertising signs are not permitted in "B-1 Neighborhood Business District" or in "B-3 Central Business District."

The "B-3 Central Business District," directly involved in this action, will be referred to hereafter as district B-3. It is defined in the ordinance (in part) as follows: "This District is located at the area of convergence of the main arterial thoroughfares and lines of public transportation. This District is primarily for retail and wholesale trade, and for business, professional and financial services for the metropolitan area and the outlying trade area of Charlotte."

Section 23-2(22) of the ordinance defines and classifies signs, insofar as pertinent to this action, as follows:

"(22)  *Sign* — Any surface, fabric or device bearing lettered, pictorial or sculptured matter designed to convey information visually and exposed to public view; or any structure (including billboard or poster panel) designed to carry the above visual information.

(a) *Advertising Sign.* A sign which directs attention to a business, commodity, service or entertainment conducted, sold or offered:

(1) Only elsewhere than upon the premises where the sign is displayed, or

(2) As a minor and incidental activity upon the premises where the sign is displayed.

(b) *Business Sign.* A sign which directs attention to a business, profession or industry located upon the premises where the sign is displayed, to type of products sold, manufactured or assembled, and/or to service or entertainment offered on said premises, but not a sign pertaining to the preceding if such activity is only minor and incidental to the principal use of the premises.

(c) *Identification Sign.* A sign, used to identify only: the name of the individual, family, organization or enterprise occupying the premises; the profession of the occupant; the name of the building on which the sign is displayed."

Charlotte is a city of more than 200,000 in population. It is the business and commercial center of Mecklenburg County and of ten or more adjoining counties in North or South Carolina.

District B-3 extends in all directions from "The Square," the intersection of Trade and Tryon Streets. It is the heart of the downtown business and commercial district. It has 28.5 miles of street frontage. This is 5.5% of the total street frontage (514.8 miles) in the six business and industrial districts. It has an area of .529 square miles (339.09 acres). The business and industrial districts in which advertising signs are permitted comprise an aggregate area of 29.9 square miles or 91.8% of the total area of the six business and industrial districts. ". . . much of the I-1, I-2 and I-3 area includes forests, farms, open fields with few roads . . ."

The area now zoned as B-3 includes a highly developed business district, with fine office buildings, stores, etc., where the market value of property ranges from five thousand dollars to six thousand dollars per front foot. It also includes large areas in which are located "such land uses as slum dwellings, cheap beer joints, used car lots, vacant lots, light manufacturing plants, and many businesses in dilapidated buildings." At specified locations, the market value of property does not exceed fifty to seventy-five dollars per front foot.

Plaintiffs are, and have been for many years, engaged in the outdoor advertising business. The greater part (75%-85%) of their business consists of providing advertising by means of poster panels or billboards. They lease land and construct thereon structures of two standard sizes in general use in the outdoor advertising business throughout the United States. They sell space on these structures to their customers, including national and regional advertisers, and post and maintain thereon the customer's copy or advertising message. These structures are built and maintained in compliance with all safety requirements prescribed by the building codes. Plaintiffs comply with all legal requirements in respect of obtaining licenses and posting bonds. In all respects, plaintiffs conduct their business in a first-class manner.

When the 1962 ordinance became effective, plaintiffs, within the area covered by its terms, had built and owned "approximately 500 outdoor advertising signs . . . affixed to land and buildings on locations leased by the plaintiffs from the owners of the real estate." Approximately 83 of these signs were located in the area now zoned as district B-3. ". . . although some few of the plaintiffs' signs advertise a business located upon the premises, 90% to 95% of them do not."

The distinction between advertising signs and business signs is based solely upon the advertising message or copy placed thereon.

Ultimate findings of fact, to which defendants excepted, are to the effect that the challenged ordinance provisions, which prohibit advertising signs in district B-3 but permit business signs therein without any limitation as to number, size or location, (1) have no reasonable relation to the public safety, public health, public morals, general welfare, or "even to appearances or other aesthetic values," and (2) arbitrarily discriminate against plaintiffs and their business without any reasonable basis therefor.

The court's conclusions of law were as follows: (1) that G.S. 160-173 does not authorize or permit the challenged ordinance provisions; (2) that, if authorized by G.S. 160-173, the prohibition of plaintiffs' advertising signs in district B-3 "is arbitrary and capricious and violates the Constitution of North Carolina, Article I, Sections 1 and 17, and the Constitution of the United States, Amendments I and XIV"; and (3) that plaintiffs have no adequate remedy at law and are entitled to a permanent injunction.

There is no controversy with reference to the 83 sign structures in use in district B-3 prior to January 30, 1962. Defendants concede the ordinance provisions relating to "Nonconforming Signs" permit plaintiffs to continue to post advertising signs on these structures. As to

nonconforming use provisions, see *Stoner McCray System v. City of Des Moines (Iowa),* 78 N.W. 2d 843, 58 A.L.R. 2d 1304; *Grant v. Mayor and City Council of Baltimore (Md.),* 129 A. 2d 363.

The challenged ordinance provisions do not prohibit or restrict plaintiffs in district B-3 with reference to business signs. However, the evidence and findings indicate plaintiffs would not be called upon to provide a significant number of such signs. (Note: There was evidence to the effect that only twelve of the business signs in district B-3 were poster panel signs and that two of these were provided by plaintiffs.)

Plaintiffs own no real property in district B-3.

Unchallenged findings include the following: Plaintiffs, since January 30, 1962, have lost a number of their locations in district B-3 on account of lease cancellations due to change of use, new construction and urban renewal. In the area now zoned as district B-3, plaintiffs lose an average of 20% of their locations each year. If new sites cannot be leased for relocation of their sign structures, plaintiffs, with reference to advertising signs, will be completely out of district B-3 within four or five years.

Defendants except to findings of fact summarized as follows: (1) Plaintiffs' locations in district B-3 approximate only 20% of all their locations in Charlotte but provide greatly in excess of 20% of exposure to motor vehicle traffic. (2) Full coverage of the Charlotte market in competition with other advertising media, to wit, newspapers, radio, television, requires the location of advertising signs within district B-3. Plaintiffs' customers, particularly national and regional advertisers, want full coverage. Plaintiffs' business will be seriously impaired unless it can provide such full coverage. (3) On account of their inability to lease and build sign structures on other sites in district B-3, plaintiffs, in order to retain their present locations, must accede to the demands of landlords for increased rent.

Defendants contend there is no evidence to support the findings of fact summarized in the preceding paragraph. It is deemed unnecessary to consider this subject with particularity. In our view, unchallenged findings of fact as well as challenged findings supported by evidence are sufficient to support the legal conclusion that plaintiffs, if the challenged ordinance provisions are enforced, will suffer injury (pecuniary loss) for which they have no adequate remedy at law. For present purposes, the exact nature and extent of such loss are immaterial.

This Court, on former appeal, stated: "The right of plaintiffs to test the challenged provision of the Charlotte city code by injunction is not controverted. There is ample authority for the suit. (Citations)."

We consider now the crucial question, namely, the validity of the challenged ordinance provisions as related and applied to plaintiffs' outdoor advertising business.

The original zoning power of the State reposes in the General Assembly. *Marren v. Gamble,* 237 N.C. 680, 75 S.E. 2d 880. It has delegated this power to the "legislative body" of municipal corporations. G.S. 160-172 *et seq.; In re Markham,* 259 N.C. 566, 131 S.E. 2d 329, and cases cited. Within the limits of the power so delegated, the municipality exercises the police power of the State. *Raleigh v. Fisher,* 232 N.C. 629, 61 S.E. 2d 897. Zoning ordinances are upheld when, but only when, they bear a "substantial relation to the public health, safety, morals, or general·welfare." *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 71 L. Ed. 303, 47 S. Ct. 114, 54 A.L.R. 1016; *In re O'Neal,* 243 N.C. 714, 719, 92 S.E. 2d 189, and cases cited.

The power to zone, conferred upon the "legislative body" of a municipality, is subject to the limitations of the enabling act. *Marren v. Gamble, supra; S. v. Owen,* 242 N.C. 525, 88 S.E. 2d 832.

G.S. 160-172, in pertinent part, provides: "For the purpose of promoting health, safety, morals or the general welfare of the community, the legislative body of cities and incorporated towns is hereby empowered to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes."

G.S. 160-173, in pertinent part, provides: "For any or all said purposes it may divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this article; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. *All such regulations shall be uniform for each class or kind of building throughout each district, but the regulations in one district may differ from those in other districts.*" (Our italics).

The cited statutes conferred upon the City Council of Charlotte legislative power to adopt a comprehensive zoning ordinance. *In re Appeal of Parker,* 214 N.C. 51, 197 S.E. 706, and cases cited. In the 1962 ordinance, the regulations with reference to signs permitted in district B-3 are uniform throughout this district. See *Murphy v. Town of Westport (Conn.),* 40 A. 2d 177, 182, 156 A.L.R. 568. Subject to constitutional limitations, the City Council had authority to determine and define legislatively what signs would be permitted in each of the

respective zones or districts. The crucial question is whether the challenged ordinance provisions contravene constitutional limitations.

It is noted that the ordinance under consideration was not adopted in the exercise of the legislative power of municipal corporations "(t)o regulate the erection of fences, billboards, signs, and other structures, and provide for the removal or repair of insecure billboards, signs, and other structures." G.S. 160-200(9). It is a comprehensive zoning ordinance adopted in the exercise of legislative power conferred by G.S. 160-172 et seq. While a "billboard or poster panel" is a "Sign" within the ordinance definition, the prohibitory features of the challenged ordinance provisions are not directed toward billboards as such but to all types of advertising signs. In district B-3, no advertising sign, by billboard or otherwise, is permitted, with one exception, namely, "(a) sign which directs attention to a business, profession or industry located upon the premises where the sign is displayed, to type of products sold, manufactured or assembled, and/or to service or entertainment offered on said premises, but not a sign pertaining to the preceding if such activity is only minor and incidental to the principal use of the premises." This, of course, is the ordinance definition of "Business Sign."

There is a presumption that the City Council adopted the 1962 zoning ordinance in the proper exercise of the police power. *Raleigh v. Morand*, 247 N.C. 363, 367, 100 S.E. 2d 870, and cases cited. Under our decisions, a property owner who asserts the invalidity of such zoning ordinance has the burden of establishing its invalidity. *Helms v. Charlotte*, 255 N.C. 647, 651, 122 S.E. 2d 817. "When the most that can be said against such ordinances is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere. In such circumstances the settled rule seems to be that the court will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining whether its action is in the interest of the public health, safety, morals, or general welfare." *In re Appeal of Parker, supra*, p. 55; *Helms v. Charlotte, supra*. Here, the burden of establishing the invalidity of the challenged provisions of the ordinance rests on plaintiffs.

In *Kinney v. Sutton*, 230 N.C. 404, 411-412, 53 S.E. 2d 306, Ervin, J., in accordance with cited cases, said: "If the police power is properly exercised in the zoning of a municipality, a resultant pecuniary loss to a property owner is a misfortune which he must suffer as a member of society." If the ordinance was adopted in the proper exercise of the police power the resultant loss to plaintiffs on account of their inability to continue their business in respect of advertising signs in district B-3 is a misfortune they must suffer as members of society.

Plaintiffs direct our attention to decisions of this Court to the effect that an ordinance may not be based solely "on aesthetic considerations." *Restaurant, Inc. v. Charlotte*, 252 N.C. 324, 326, 113 S.E. 2d 422, and cases cited. Suffice to say, we find no basis for the suggestion that the challenged provisions of the 1962 zoning ordinance are based in whole or in part on aesthetic considerations. Defendants make no contention that permitted "Business Signs" are more attractive than prohibited "Advertising Signs."

It is noteworthy that plaintiffs do not attack the ordinance on the ground enforcement thereof with reference to specific locations in district B-3 in which plaintiffs are interested would contravene plaintiffs' constitutional rights. Plaintiffs seek to enjoin enforcement throughout the entire district. Hence, questions as to whether reasonable grounds exist for including particular locations in district B-3 are not presented.

The purposes for which a municipal corporation may adopt a comprehensive zoning ordinance are set forth in G.S. 160-174.

Section 23-3 of the ordinance, after setting forth a general purpose in accord with G.S. 160-174, continues: "The zoning Districts and maps have been made with due consideration of future growth, development and change in land development according to objectives expressed and mapped in the General Plan for the Development of the Charlotte Metropolitan Planning Area, as well as with due consideration of existing development and uses of land in the City of Charlotte and its Perimeter Area. The regulations and Districts contained herein thus represent reasonable consideration as to the character of the Districts and their peculiar suitability for particular uses of land and have been made with a view to preserving the existing environment and/or assuring the development of a future environment that realizes the greatest possible use and enjoyment of land on individual properties, balanced against the necessary protection of the values of buildings and land and the use and enjoyment of land on adjacent properties, with the objective of promoting and protecting the public welfare through the regulation of land use and the process of land development."

The ordinance provision defining "B-3 Central Business District," quoted above, discloses district B-3 "is primarily for retail and wholesale trade, and for business, professional and financial services for the metropolitan area and the outlying trade area of Charlotte." Obviously, the legislative intent was to establish a first-class business and commercial district in the heart of the downtown area. In our view, it was permissible for the City Council to determine that the accomplishment

of this purpose would serve the entire city and particularly the owners and occupants of property in district B-3. Moreover, we think it was permissible for the City Council to determine that it would be advantageous to the owners and occupants of property in district B-3 and would enhance its status as a first-class business and commercial district to limit advertising signs within the district to those defined in the ordinance as business signs. Evidently, the City Council took the view that advertising signs directing attention to products and services available elsewhere would tend to divert attention from products and services available within the district. It is noted that a photograph in evidence shows one of plaintiffs' nonconforming use structures in district B-3 on which there appears a poster advertising quite attractively the "Cotswold Shopping Center," "Randolph at South Sharon Amity Roads." It is quite clear the effect of such advertising sign, indeed its purpose, is to divert patronage from the downtown business and commercial district to the advertised surburban shopping center.

Plaintiffs contend, and the court below found, that the challenged ordinance provisions, which prohibit advertising signs in district B-3 but permit business signs therein without any limitation as to number, size or location, have no reasonable relation to the public safety, health, morals, general welfare, or "even to appearances or other aesthetic values." However, defendants do not contend that these specific ordinance provisions are related directly to the public safety, health, morals or general welfare. Defendants contend, and rightly so, that the comprehensive zoning ordinance, authorized and adopted in the proper exercise of the police power, does have a reasonable relation to the public safety, health, morals and general welfare. *Kinney v. Sutton, supra,* and cases cited.

The ultimate question is whether the provisions prohibiting advertising signs but permitting business signs in district B-3 arbitrarily discriminate against plaintiffs and their business without any reasonable basis therefor. We are of opinion, and so decide, that in respect of district B-3, the distinction is based on a reasonable classification and does not arbitrarily discriminate against plaintiffs.

Decisions in support of this view, all arising under provisions of *a zoning ordinance* excluding advertising signs from indicated districts, include the following: *United Advertising Corp. v. Borough of Raritan (N. J.),* 93 A. 2d 362 *(all districts); Landau Advertising Co. v. Zoning Board of Adjust. (Pa.),* 128 A. 2d 559 ("A" Commercial district); *Silver v. Zoning Board of Adjustment (Pa.),* 112 A. 2d 84 ("A" Commercial district); *Criterion Service v. City of East Cleveland (Ohio),* 98 N.E. 2d 300, appeal dismissed 89 N.E. 2d 475 (Retail

Store district); *Central Outdoor Adv. Co. v. Village of Evendale (Ohio)*, 124 N.E. 2d 189 ("B" Commercial district); *Murphy v. Town of Westport (Conn.)*, 40 A. 2d 177, 156 A.L.R. 568 (Business districts); *Rockingham Hotel Company v. North Hampton (N. H.)*, 146 A. 2d 253 (Rural district). Although no zoning ordinance was involved, the following cases relating to statutory or ordinance provisions are in accord: *General Outdoor Adv. Co. v. Department of Public Wks. (Mass.)*, 193 N.E. 799; *Kelbro, Inc. v. Myrick (Vt.)*, 30 A. 2d 527; *In re Opinion of the Justices (N.H.)*, 169 A. 2d 762.

In *United Advertising Corp v. Borough of Raritan, supra*, the plaintiff contended provisions of the ordinance, which excluded advertising signs *in all districts* but permitted signs directing attention to businesses on the premises, constituted unlawful discrimination. In rejecting this contention, the court, in opinion by Brennan, J., said: "The business sign is in actuality a part of the business itself, just as the structure housing the business is a part of it, and the authority to conduct the business in a district carries with it the right to maintain a business sign on the premises subject to reasonable regulations in that regard as in the case of this ordinance. Plaintiff's placements of its advertising signs, on the other hand, are made pursuant to the conduct of the business of outdoor advertising itself, and in effect what the ordinance provides is that this business shall not to that extent be allowed in the borough."

In *Rockingham Hotel Company v. North Hampton, supra*, the opinion of Duncan, J., in accordance with the cited cases, states: "According to well established principles, the separate classification, as a permitted use, of signs advertising businesses conducted upon the premises where the signs are located, as against a prohibited use of like signs advertising products or services available in other locations, is a reasonable classification which does not as a matter of law produce arbitrary discrimination or deprive the plaintiff of the equal protection of the laws."

In *Central Outdoor Adv. Co. v. Village of Evendale, supra*, the court held invalid an ordinance providing that "(n)o advertising sign or billboard shall hereafter be erected *within the limits of this village*, except to advertise the business or product of the owner or occupant of the premises on which the same is located." (Our italics). The court then considered the plaintiff's contention with reference to the provisions (Section 502.20) of a comprehensive zoning ordinance permitting in "B" Commercial district signs relating "only to services, articles and products offered on the premises." The following excerpt from the opinion of Weber, J., is pertinent and applicable to the case now before us, to wit:

"But a regulation or prohibition of billboards or any other business, which is part of a general zoning plan, may be found to stand upon some different ground than when contained in an ordinance which deals only with a particular business. Zoning divides the municipality into districts and the prohibition of a particular business in a particular zone may be impartial, reasonable and valid because that particular business is unrelated to and inconsistent with the activities permitted in that zone and which are the basis of establishing that zone. It is not necessary to repeat here, with respect to particular zones, the reasons for holding that the advertising in question is not necessarily a menace to life and a detriment to public safety.

"Zone 'B' Commercial, in the Evendale Zoning Ordinance, is devoted entirely to products and services offered on the premises. Accessory signboards, that is, signboards advertising only such products and services, are consistent with the principle upon which the establishment of such zone is based; they are in actuality a part of the business and both the advertising and the business are exclusively local. Signboards as used by the plaintiff, which advertise services and products other than those produced or sold on the premises on which the signboard is located, are not consistent with the principle which is the basis upon which that zone is established. The difference between signboards which advertise only the products made or offered on the premises and the kind of advertising offered by the plaintiff, is a determining factor where the zone is devoted exclusively to local business.

"Section 502.20, which excludes billboards from 'B' Commercial Zone of the Zoning Ordinance of 1953, except such as constitutes an accessory use, is constitutional and valid. *Criterion Service, Inc. v. City of East Cleveland,* Ohio App., 88 N.E. 2d 300."

In *Varney & Green v. Williams (Cal.),* 100 P. 867, 21 L.R.A. (N.S.) 741, cited by plaintiffs as a landmark case, the ordinance prohibited advertising signs within the corporate limits of East San Jose except those advertising merchandise for sale on the premises. Prior to the adoption of the ordinance, the plaintiff corporation, which conducted a general advertising business, had constructed and was maintaining three billboards for advertising within the corporate limits of San Jose. The ordinance was declared invalid and enforcement was enjoined. The basis of decision is indicated by the following excerpt from the opinion: "The single question for decision, therefore, is whether the enactment of this ordinance was within the legislative power of the town of East San Jose. Except for the limited exemption conferred by section 3, the effect of the ordinance is to absolutely prohibit the erection or main-

tenance of billboards for advertising purposes. There is no attempt to restrict the operation of the enactment to billboards that may be insecure or otherwise dangerous, or to advertising that may be indecent. The town trustees have undertaken to make criminal the maintenance of any billboard, however securely it may be built, and however unobjectionable may be the advertising matter displayed upon it." This California decision of 1909 is similar to the 1908 decision of this Court in *S. v. Whitlock*, 149 N.C. 542, 63 S.E. 123. These decisions antedate the era of zoning. In *Rockingham Hotel Company v. North Hampton, supra,* the court aptly said: "Unlike the ordinance considered in the cited case *(Varney & Green v. Williams, supra)* however, the ordinance before us is a comprehensive zoning ordinance; and the prohibition contained in the section complained of must be considered with reference to other provisions of the same ordinance."

Plaintiffs cite *Triborough Bridge & T. Authority v. B. Crystal & Son,* 153 N.Y.S. 2d 387, and *Sunad, Inc. v. City of Sarasota (Fla.),* 122 So. 2d 611; *Abdo v. City of Daytona Beach (Fla.),* 147 So. 2d 598. Suffice to say, these cases do not involve comprehensive zoning ordinances and are otherwise factually distinguishable.

Plaintiffs call attention to *O'Mealia Outdoor Adv. Co. v. Mayor and Council (N.J.),* 27 A. 2d 863, decided some ten years prior to *United Advertising Corp. v. Borough of Raritan, supra.* In *O'Mealia,* the ordinance related to billboards or other structures for the outdoor display of advertising within the Borough of Rutherford. Subsequent to *United Advertising Corp. v. Borough of Raritan, supra,* it was decided in *United Advertising Corp. v. Borough of Metuchen (N.J.),* 172 A. 2d 429, that the plaintiff was not entitled to *summary judgment.* However, on remand, the superior court after full hearing entered final judgment for defendant. *United Advertising Corp. v. Metuchen (N.J.),* 184 A. 2d 441. It is noted that the zoning ordinance under consideration provided: "No advertising signs shall be permitted in any district in the Borough of Metuchen." Our impression is that the law as stated in *United Advertising Corp. v. Borough of Raritan, supra,* continues in full vigor as the prevailing rule in New Jersey.

As stated above, the 1962 ordinance under consideration permits advertising signs in an aggregate area of 29.9 square miles or 91.8% of the total area of the six business and industrial districts.

For the reasons stated, the judgment of the court below is reversed.

Reversed.