WILLIAM T. MICHAEL v. GUILFORD COUNTY; CURTIS R. KENNEDY AND LINDSAY W. COX.

(Filed 1 March, 1967.)

**Administrative Law § 2; Injunctions § 3; Counties § 2.1— Where adequate remedy by administrative procedure is provided, plaintiff must exhaust such remedy before resorting to injunction.**

A landowner may not maintain an action to enjoin a county from enforcing its zoning regulations limiting the use of the land to residential and farming purposes upon the contention that the land lay near an airport and that subsequent to the enactment of the zoning regulations the use of larger and noiser aircraft over the land, with greater frequency and lower altitudes, rendered the land worthless for the permitted uses, when it appears that the county board of adjustment had authority to permit special exceptions to the zoning regulations in hardship cases, G.S. 153-266.17, with right of review by *certiorari* to the Superior Court, and that the landowner had not invoked such administrative remedy.

APPEAL by plaintiff from *Hasty, Special Judge,* October 10, 1966 Non-Jury Session of GUILFORD, Greensboro Division, docketed and argued as No. 698 at Fall Term 1966.

Civil action for injunctive relief, instituted June 28, 1966, heard below on defendants' demurrer to complaint.

Plaintiff alleged in substance, except where quoted, the matters set forth in the following numbered (our numbering) paragraphs:

1. Plaintiff and individual defendants are residents of Guilford County, "a body corporate and politic." Defendants Kennedy and Cox are Inspections Director and Planning Director, respectively, of Guilford County.

2. Plaintiff is the owner of a described tract of land in said county containing 4.5 acres, more or less, located "approximately 7,000 feet from the northern end of Runway No. 5-23 of the airport operated by the Greensboro-High Point Airport Authority."

3. A two-story frame dwelling and a one-story cinder block building are located on said property. "For approximately one year prior to June 8, 1966," plaintiff and his family resided in said dwelling; and plaintiff, by his own efforts and at substantial expense, had renovated said cinder block building for use as a woodworking shop.

4. The Airport Authority has maintained Runway No. 5-23 for many years for the purpose of accommodating aircraft during takeoff and landing; and, "(u)ntil some time in 1965," such aircraft passed directly over said property without unreasonable and oppressive interference with the use thereof. In recent months, however, "the Airport Authority *has announced its intention* to extend the runway 2000 feet northeasterly and the approach 2700 feet

from the end thereof, to accommodate larger jet aircraft." (Our italics.) Now, "larger and noisier aircraft are using the runway; the frequency of such flights has vastly increased; the aircraft have begun to fly over the property at lower altitudes and interference with the use and enjoyment of surrounding real estate in general and with plaintiff's property in particular has been much increased."

5. "Aircraft using Runway 5-23 now pass directly over plaintiff's real property at altitudes substantially less than 150 feet, at all hours of the day and night. The landing lights of such aircraft brightly illuminate the property during the evening and morning hours; the noise and wind generated by their engines cause plaintiff's buildings to vibrate, windows to rattle and crack and the mortar joints and plaster to separate. Such flights have placed plaintiff and his family in fear of bodily harm, have repeatedly startled and awakened them from sleep, and have caused them great inconvenience and embarrassment by disruption of conversation and television reception." On account of these conditions, on June 7, 1966, plaintiff and his family were forced to move their residence from said premises. The cinder block building can be used for no practical purpose. Most of the land "is now lying fallow." The flights of aircraft have "rendered the property useless for development as residential property and impractical for development as a farm (the only uses permitted under Zoning Regulations), and thus substantially (have) impaired the value of the real estate."

6. Under zoning regulations adopted in 1964 by the Board of Commissioners of Guilford County, a portion of plaintiff's property fronting on State Road No. 2137 is in the highest classification of the Guilford County Zoning Ordinance, that is, it is restricted to use for a one-family residence. The portion so restricted includes the dwelling, the yard used therewith, and a small portion of the cinder block building. The remaining portion, including the greater part of the cinder block building, is zoned for agricultural purposes. The cinder block building cannot be used as a residence and no *bona fide* agricultural use thereof is practicable.

7. In February 1966, plaintiff's application to the Guilford County Inspections Department for an electrical permit so that the cinder block building could be used as a woodworking shop was denied because that use was prohibited by said zoning restrictions. Advised to do so by defendant Kennedy, plaintiff filed an application that his property be rezoned to permit its use for industrial purposes. At the hearing before the Guilford County Planning Board, defendant Cox opposed plaintiff's said application on the ground the Planning Department did not "know the long-range needs of the airport, in regard to the road leading to the property,"

and the Planning Board denied plaintiff's application. Plaintiff appealed to the Board of County Commissioners. "In the interim, all individuals owning property fronting on public road 2137, and adjacent to that of plaintiff, and all property owners who could conceivably be affected by the requested zoning change, joined in plaintiff's petition to have the property rezoned. The Guilford County Board of Commissioners nevertheless denied the request for rezoning on June 6, 1966."

8. "Because of the close proximity of aircraft on takeoff and landing, plaintiff's property is wholly unsuitable for development restricted to the uses permitted by zoning." Under present conditions, "the zoning of plaintiff's property for single-family residence and agricultural uses is an unreasonable, capricious, confiscatory and arbitrary action of the zoning authority in that it renders development of plaintiff's property a practical impossibility"; and "(t)he Zoning Ordinance is therefore invalid with respect to plaintiff's property."

9. Plaintiff's property has already been damaged by defendants' arbitrary and capricious actions, and will be further depreciated in value, in violation of plaintiff's constitutional rights, if Guilford County continues to enforce the zoning regulations as to plaintiff's property; and that plaintiff has no adequate remedy at law.

Plaintiff prays "(a) permanent injunction restraining defendants and all personnel under their control from enforcing the Zoning Ordinance as to plaintiff's property herein described."

Defendants filed a joint demurrer, asserting therein the complaint did not state facts sufficient to constitute a cause of action.

The court entered an order sustaining said demurrer. Plaintiff excepted and appealed.

*Jack W. Floyd for plaintiff appellant.*
*Ralph A. Walker for defendant appellee.*

BOBBITT, J. According to plaintiff's allegations: The zoning regulations of which he complains were adopted by the Board of Commissioners of Guilford County in 1964. Runway No. 5-23, for many years, has been maintained by the Greensboro-High Point Airport Authority to accommodate aircraft during takeoff and landing. Plaintiff's property is located approximately 7,000 feet from the northern end of said runway. Prior to 1965, aircraft passing directly over plaintiff's property did not unreasonably interfere with the use thereof. The depreciation in the value of plaintiff's property resulting from the frequency and lower altitudes of larger

and noisier aircraft passing directly overhead has occurred since the adoption of said zoning regulations.

Plaintiff does not allege any facts relating to the legal status of the Greensboro-High Point Airport Authority. His brief directs our attention to *Airport Authority v. Johnson*, 226 N.C. 1, 36 S.E. 2d 803 (1946), in which three special acts of the General Assembly relating to the Greensboro-High Point Airport Authority, Public-Local Laws of 1941, Chapter 98, and Session Laws of 1943, Chapter 601, and Session Laws of 1945, Chapter 206, are cited and discussed. The 1941 Act creates the Greensboro-High Point Airport Authority, consisting of five members, as "a body corporate and politic," with authority to acquire property for the construction of airports and to make rules and regulations for the maintenance and operation thereof. It provides for the appointment of one member by the City Council of Greensboro; one by the City Council of High Point; and three by the Board of Commissioners of Guilford County. It confers authority "(t)o sue and be sued in the name of said Airport Authority." The 1943 Act provides, *inter alia*, that "(p)rivate property needed by said airport authority for any airport, landing field or facilities of same may be acquired by gift or devise, or may be acquired by private purchase or by the exercise of the power of eminent domain . . ." In *Airport Authority v. Johnson, supra,* it was held the 1945 Act "gives complete and express recognition of the plaintiff Authority as the agency of Greensboro and High Point, as well as of Guilford County; and the authority is given each municipality to deal with it, and upon a plebiscite to lend credit and to issue bonds and raise money for its support." According to *these* statutes, said Airport Authority is a separate and distinct corporate entity, with power to sue and be sued in its corporate name and to acquire property in its corporate name by the exercise of the right of eminent domain.

Whether plaintiff can maintain an inverse condemnation action against said Airport Authority for compensation on account of its appropriation of a flight easement over all or a portion of plaintiff's property is not presented. In this connection, see *Charlotte v. Spratt*, 263 N.C. 656, 140 S.E. 2d 341. The present action is to enjoin enforcement of particular provisions of a zoning ordinance with reference to plaintiff's property.

The complaint refers to the "Guilford County Zoning Ordinance" and to certain zoning regulations affecting plaintiff's property. Neither the ordinance in its entirety nor any specific portion thereof is set forth in the complaint or attached thereto as an exhibit.

MICHAEL *v.* GUILFORD COUNTY.

Since the complaint contains no reference to a special enabling act relating to Guilford County, we must assume the zoning ordinance was adopted pursuant to the statutory authority conferred by G.S. Chapter 153, Article 20B, § 153-266.10 *et seq.* G.S. 153-266.10 empowers the board of commissioners of any county to regulate and restrict, *inter alia,* "(t)he location and use of buildings, structures, and land for trade, industry, residence or other purposes, except farming." It provides further: "No such regulations shall affect *bona fide* farms, but any use of such property for non-farm purposes shall be subject to such regulations. Such regulations may provide that a board of adjustment may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained." G.S. 153-266.17 requires the appointment of a board of adjustment and contains the following provisions, *inter alia,* relating thereto. "Such board of adjustment shall hear and decide appeals from and review any order, requirement, decision, or determination made by an administrative official charged with the enforcement of any ordinance adopted pursuant to this article." Again: "The zoning ordinance may provide that the board of adjustment may permit special exceptions to the zoning regulations in the classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified in the ordinance. The ordinance may also authorize the board to interpret the zoning maps and pass upon disputed questions of lot lines or district boundary lines and similar questions as they arise in the administration of the ordinance. The board shall hear and decide all such matters referred to it or upon which it is required to pass under any such ordinance." Again: "Every decision of such board shall be subject to review by the superior court by proceedings in the nature of *certiorari.*"

To what extent, if any, the zoning ordinance purports to define the status, function and powers of an "Inspections Director" or of a "Planning Director" is not disclosed. The function of a "Planning Board" is to make recommendations to the Board of County Commissioners. G.S. 153-266.15. Obviously, an "Inspections Director" is an administrative officer from whose decision plaintiff was authorized by G.S. 153-266.17 to appeal to the board of adjustment. Plaintiff does not allege he has in any manner applied to the board of adjustment for relief.

Plaintiff does not attack the validity of the zoning ordinance. See *S. v. Owen,* 242 N.C. 525, 88 S.E. 2d 832. Nor does he assert any particular provision thereof is unconstitutional or otherwise void. See *Clinard v. Winston-Salem,* 217 N.C. 119, 6 S.E. 2d 867; *Schloss*

v. Jamison, 258 N.C. 271, 128 S.E. 2d 590, s. c., 262 N.C. 108, 136 S.E. 2d 691. He alleges a portion of his property is now zoned for residential use and the remainder for agricultural use, and that it is impracticable under the circumstances to use his property for these purposes. Too, he alleges the cinder block building, which is partly in a residential zone and partly in an agricultural zone, is not suitable for either permitted use.

"The mere fact that a zoning ordinance seriously depreciates the value of complainant's property is not enough, standing alone, to establish its invalidity." Helms v. Charlotte, 255 N.C. 647, 651, 122 S.E. 2d 817, 820; Durham County v. Addison, 262 N.C. 280, 136 S.E. 2d 600. Also, see In re Appeal of Parker, 214 N.C. 51, 197 S.E. 706.

The only alleged material change in plaintiff's property since the challenged zoning regulations were adopted is that larger and noisier aircraft fly over his property with greater frequency and at lower altitudes. Plaintiff alleges in substance that "surrounding real estate in general" is similarly affected. The complaint contains no other allegation as to changes in the character of the neighborhood or area in which plaintiff's property is located. (We assume, for present purposes, that such flights are lawful; otherwise, there would be a cause of action against the offending parties.) The crucial question is whether the special conditions created by such flights entitle plaintiff to relief from enforcement of all or any of the attacked zoning regulations with reference to all or any part of his property.

The cited statutory provisions confer authority on the board of adjustment. As indicated, the complaint does not allege the provisions of the zoning ordinance. Hence, we do not know what additional powers and procedures, if any, relating to proceedings before the board of adjustment, are set forth in the zoning ordinance. See Austin v. Brunnemer, 266 N.C. 697, 147 S.E. 2d 182, where an ordinance adopted by the Board of Commissioners of Gaston County pursuant to the authority conferred by G.S. 153-266.10 et seq., was considered.

We are of the opinion, and so decide, that, upon the facts alleged, plaintiff may not institute and maintain an action in the superior court to enjoin Guilford County from enforcement of zoning regulations on the ground that, as applied to plaintiff's property, they are unreasonable and arbitrary. Our statutes provide an adequate remedy, namely, by a proceeding before the board of adjustment, either on appeal from an adverse administrative decision or on original petition for relief on account of special adverse conditions. Upon the hearing before the board of adjustment, the facts

in connection with plaintiff's property, the character of the neighborhood, the effect of the increased use of the air space over plaintiff's property upon the present permissible uses thereof, etc., can be determined. Thereafter, the decision will be "subject to review by the superior court by proceedings in the nature of *certiorari*." G.S. 153-266.17. The indicated procedure was followed in *Austin v. Brunnemer, supra.* See also *Durham County v. Addison, supra,* and decisions cited therein. This procedure has been followed in similar circumstances under zoning ordinances adopted by municipalities, pursuant to authority conferred by general statute, G.S. Chapter 160, Article 14, § 160-172 *et seq.,* or pursuant to special act, or both. *Craver v. Board of Adjustment,* 267 N.C. 40, 147 S.E. 2d 599; *Chambers v. Board of Adjustment,* 250 N.C. 194, 108 S.E. 2d 211; *In re Pine Hills Cemeteries, Inc.,* 219 N.C. 735, 15 S.E. 2d 1.

"Generally, there is no ground for equitable relief against zoning where there has been no invasion of property rights, or where there is an adequate remedy at law, as by *certiorari* or *mandamus,* or by pursuit of a statutory remedy." McQuillin Mun. Corp. (3rd Ed.), Vol. 8A, § 25.290, p. 328.

We are advertent to the fact that in *Helms v. Charlotte, supra,* on which plaintiff relies, similar relief was sought by action in the superior court. Suffice to say, the defendant, answering the complaint, raised no question as to procedure and the procedural question now determined was not referred to in the Court's opinion.

On this appeal, decision is based solely on the ground the complaint does not allege facts sufficient to show the procedure prescribed by statute does not constitute an adequate remedy at law.

For the reasons stated, the order sustaining defendants' demurrer is affirmed.

Affirmed.