WASHINGTON PARK NEIGHBORHOOD ASSOCIATION AND ELLA JOHNSON v. WINSTON-SALEM ZONING BOARD OF ADJUSTMENT, GEORGE W. CRONE, FRED D. HAUSER, NORMAN SWAIM, JAMES R. LANCASTER, AND DAISY REED

No. 7721SC241

(Filed 7 March 1978)

1. **Municipal Corporations § 30.21— Board of Adjustment hearings—no requirement to sound record**

    The N.C. Administrative Procedure Act does not require that a Board of Adjustment sound record its hearings in order to produce a reviewable official record.

**2. Municipal Corporations § 30.22— special use permit—affirmative findings required—sufficiency of evidence to support findings**

Petitioners' contention that respondent Board of Adjustment violated the city's code and acknowledged fair trial standards because the code required five affirmative findings before issuance of a special use permit and the Board's *pro forma* reading of the requirements at the beginning of its meeting and making no further reference to them amounted only to lip service is without merit, since there was adequate evidence to support the five affirmative findings that the ordinance required the Board to make before issuing a special use permit.

**3. Municipal Corporations § 30.21— hearing on special use permit application—limitation of issues—no error**

Where respondent Board held a hearing on applicants' request for a special use permit, but applicants were absent from the hearing, the Board did not violate fair trial standards by limiting the issues to be considered at a second hearing to those raised in the first hearing.

**4. Municipal Corporations § 30.6— special use permit granted—no statement of reasons required**

The section of the Winston-Salem Code which provides that the Board of Adjustment must state reasons for its denial of a special use permit but which does not require that such reasons be stated, over and above the regular findings, when the Board approves an application does not discriminate against persons aggrieved by the grant of another's application in violation of equal protection and due process guarantees, since it is only required that the parties have sufficient information to understand the Board's actions, and there is no requirement that parties aggrieved by a grant be treated as are parties aggrieved by a denial.

PETITIONERS appeal from *Collier, Judge*. Order entered 16 February 1977 in Superior Court, FORSYTH County. Heard in the Court of Appeals 19 January 1978.

Petitioners filed petition for a writ of certiorari pursuant to G.S. 160A-388(e) and G.S. 150A-43 for review of the decision of Winston-Salem Zoning Board of Adjustment granting the application of Ronnie Glass and John D. Yarbrough for a special use permit to establish limited off-street parking on their property zoned for single-family residential use.

The matter came on for review 13 December 1976. At the hearing the court reviewed the minutes of the proceedings of the Board to test them against petitioner's allegations. Petitioners alleged that applicants Glass and Yarbrough purchased two lots, zoned R-4, residential, with parking lots a permitted special use, in 1971. The lots fronted on Broad Street. At time of purchase,

two single-family dwellings stood on the lots. In 1973 one of the homes was declared unfit for human habitation pursuant to the Winston-Salem Code and was demolished. In 1974 that lot was graded to street level with resulting sharp cuts and high embankments on either side. One of the sides abuts the lot belonging to Petitioner Johnson. In 1974 applicants applied to the Board of Aldermen to rezone the property from R-4 to I-2, Industrial. Their application was denied. Their 1976 application for special use permit went to the City-County Planning Board which suggested recommendation, after major modification. The Board first met 5 August 1976. Petitioners alleged "partial and materially incomplete and inaccurate minutes of said meeting were taken. . . ." The applicants were absent so the hearing was postponed until 2 September. At the 2 September hearing the Board limited questioning of applicants to issues raised by the Board the month previous. Petitioners alleged again that the minutes were partial and incomplete. The Board granted the special use "provided only 16 passenger cars or pickup trucks use this lot and that the lot entrance be chained off from 6:00 p.m. to 7:00 a.m." The petitioners attacked this decision in their writ to Superior Court, alleging that the Board failed to follow the procedures set out in its own code because it failed to keep complete and accurate minutes. The room in which both hearings were held was equipped for sound recording, but the equipment was not used. The limitation of the second hearing's questions to those drawn up in the first was also attacked. Petitioners also attacked the Board's decision because the appropriate code section required four affirmative findings before issuance of a special use permit and the "Board's *pro forma* reading of the four findings at the beginning of the meeting and its attempt to incorporate that reading into each decision rendered thereafter makes a nullity of that requirement." Petitioners further alleged that the four *pro forma* findings were not supported by competent, material and sufficient evidence. Petitioners attacked the Board's decision as an unconstitutional denial of due process as guaranteed by G.S. 160A-388(e), and G.S. 150A-43 through 150A-52, safeguarding petitioners from arbitrary Board action by guaranteeing right of meaningful review. Finally, petitioners attacked the consitutionality of Winston-Salem Code § 25-19(A)(2)(c)1, which requires that the Board state the reason for denial of a special use permit, but does not require that the Board state its reasons for approval.

Petitioners alleged that this distinction violates the equal protection clauses of the Fourteenth Amendment and of the N. C. Constitution.

The Board's minutes reveal that petitioners presented testimony which tended to show that the Winston-Salem School of the Arts is growing and desirous of maintaining the residential quality of its boundaries and that the parking lot would adversely affect this desire, that at the first hearing 37 persons were present who requested denial of the application. The Chairman of the Washington Park Neighborhood Association, an unincorporated association of some one hundred and thirty-five members, organized in part "to prevent further encroachment of industrial, commercial and high density land uses," testified that any use of the lots in question other than residential "would domino and stood a chance of the entire hill on Broad Street being turned into an industrial area." She further testified that applicants had been in violation of a zoning ordinance forbidding non-maintenance of a vacant lot so as to permit waist-high weeds and grasses, even before they were refused their 1974 rezoning permit, that traffic was already heavy and poorly monitored on the street running past the lot in question, that Petitioner Johnson's property had already been damaged by the cut and abutment, and that "the Association as a group felt this was a very important piece of property in the more total sense of their neighborhood." Testimony was presented that applicants could use other land as a parking lot. Petitioner Johnson testified that, although she had agreed to applicant's 1974 rezoning petition, she had done so because she didn't realize others might support her if she refused, that she no longer felt secure in her retirement home and "since they had dug out the big hole at her driveway she had been so disturbed about it that her mind was like that of an animal in a cage and what must she do now."

At the second hearing petitioners presented a petition, signed by 45 people, representing 28 families, all property owners living within a two-block area of the lot in question, alleging that rental business in the area would decline were the special use parking lot allowed, that an overall plan was in the process of being formulated by the Washington Park Neighborhood Association and the City-County Planning staff for growth in the area involved to which a parking lot would be inimicable, that the lots

were a natural border between Duke Power Company's installation and the residential district south of the lots, and that applicants had clearly bought the lots contemplating a successful rezoning petition and, when it was denied, graded the lot without permission and let it grow over so as to make it unsuitable for residential purposes.

Applicants testified that they have a business on the lot east of the ones in question and that they need to use the lot facing Broad Street as a parking lot for their employees because there are few available spaces on the street facing their business, and because their other property is clearly unsuitable; that the Planning Board recommended approval of their permit; that the remaining house is and will be rented; that the lot in question has been properly graveled to keep down dust; that only sixteen cars will be allowed to park on the lot, and then only during work hours; that they cannot use the lot for residential purposes, but that they plan to line the lot with pine trees or a buffer between the lot and petitioner Johnson's home and to install a pedestrian gate.

The Secretary of the Board read, at the beginning of each meeting, the four findings of fact which must be made by the Board before issuance of a special use permit:

"(1) that the use will not materially endanger the public health or safety if located where proposed and developed according to the application and plan as submitted and approved,

(2) that the use meets all required conditions and specifications,

(3) that the use will not substantially injure the value of adjoining or abutting property, or that the use is a public necessity, and

(4) that the location and character of the use, if developed according to the application and plan submitted and approved, will be in harmony with the area in which it is to be located and in general conformity with the comprehensive plan of Winston-Salem and its environs."

The secretary explained that if a motion were made to approve a special use permit, seconded and passed, the above language

would not be repeated but the record would show that the Board had made an affirmative finding on each. He further explained that an additional finding would be required:

"In approving an application for the issuance of a special use permit the Board of Adjustment may impose additional reasonable and appropriate conditions and safeguards to protect the public health and safety, and the value of neighboring properties, and the health and safety of neighboring residents."

The court found that the decision of the Zoning Board was supported "by competent and material evidence, was not arbitrary, oppressive or attended with manifest abuse of authority, was in accord with law, and should be sustained; . . ." From this order petitioners appeal.

*Jim D. Cooley and William G. Pfefferkorn for petitioner appellants.*

*Womble, Carlyle, Sandridge & Rice by Roddey M. Ligon, Jr.; and City Attorney Ronald G. Seeber for respondent appellees.*

CLARK, Judge.

[1] Petitioners raise much the same errors on appeal that they raised in their writ to the Superior Court. First they allege that the Board violated the procedures required by the City Code as well as those of the North Carolina Administrative Procedure Act, and both the Federal and State Constitutions, and that the court therefore erred in affirming the Board's decision. This assignment of error has several collateral parts, the first of which involves the issue of whether the record was adequate enough to permit review because there were errors and omissions in the record printed up from the handwritten minutes. Petitioners claim that the Administrative Procedure Act's requirement demands that sound recording be used where possible to produce a reviewable official record.

It is true that the hearings were held in a room equipped for sound recording, but it is not true that the Administrative Procedure Act requires that a Board of Adjustment sound record its hearings. So to demand would put a great burden on the Board, and for that reason municipal corporations were specifically ex-

cluded from the requirements of G.S. 150A-29 and G.S. 150A-37, that trial rules of evidence and production of evidence be followed in proceeding before State agencies. Handwritten records are adequate. The errors and omissions the petitioners allege are minimal and do not call the adequacy of this record into question.

[2] The petitioners raise a more important issue when they attack the Board's action as violative of Winston-Salem's own code as well as acknowledged fair trial standards. *Humble Oil and Refining Co. v. Board of Aldermen*, 284 N.C. 458, 202 S.E. 2d 129 (1974), is the leading case on Code requirements in special use permit grants or denials, although it should be noted that *Humble Oil's* narrow holding involves requirements which must be met only before a special use may be denied:

> "Safeguards against arbitrary action by zoning boards in granting or denying special use permits are not only to be found in specific guidelines for their action. Equally important is the requirement that in each instance the board (1) follow the procedures specified in the ordinance; (2) conduct its hearings in accordance with fair-trial standards; (3) base its findings of fact only upon competent, material, and substantial evidence; and (4) in allowing or denying the application, it state the basic facts on which it relied with sufficient specificity to inform the parties, as well as the court, what induced its decision." 284 N.C. at 471, 202 S.E. 2d at 138.

The findings the Winston-Salem Code required were substantially the same as those found reasonably specific in *Humble Oil*. Petitioners do not attack the ordinance requirements *per se* but claim that the Board gave only lip service to them, by having them read *pro forma* at the beginning of both meetings and paying no further attention to them. There is, however, nothing in the *Humble Oil* case that demands anything more, provided there is "competent, material, and substantial evidence" to hold the requirements met. *Humble Oil* specifically refuses to attempt a test for "substantial evidence" but quotes with approval Professor Hanft's quotation, from Chief Justice Hughes, in 49 N.C.L. Rev. 635, 667: " ' "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." It "must do more than

create the suspicion of the existence of the fact to be established
. . . . [I]t must be enough to justify, if the trial were to a jury, a
refusal to direct a verdict when the conclusion sought to be
drawn from it is one of fact for the jury." ' " 284 N.C. at 470, 471,
202 S.E. 2d at 137. It clearly need not be uncontradicted.
Although petitioners did present contrary evidence there was
adequate evidence to support the five affirmative findings that
the ordinance required the Board make before issuing the special
use permit. It is preferable that a Board not read a finding in the
alternative as this Board did with No. 3 and then adopt it without
clarification as to which alternative was supported by the
evidence. But in the case *sub judice* there was some evidence to
support both alternatives so the Board's action was not con-
founding.

[3] Fair-trial standards were not violated by the Board's limiting
of the second meeting's issues to those raised in the first. The
petitioners had ample opportunity to be heard at both meetings
and to cross-examine the applicants at the second. It is not suffi-
cient to allege that the Board held the second meeting only
because it became clear that the applicants had not made their
case at the first. *Humble Oil* states that "[w]hen an applicant has
produced competent, material, and substantial evidence tending
to establish the existence of the facts and conditions which the or-
dinance requires for the issuance of a special use permit, *prima
facie* he is entitled to it." 284 N.C. at 468, 202 S.E. 2d at 136. Peti-
tioners do not attack any of the five elements that go to make up
a fair "Board" trial:

> "Notwithstanding the latitude allowed municipal boards,
> as Justice Bobbitt (now Chief Justice) pointed out in *Jarrell*,
> a zoning board of adjustment, or a board of aldermen con-
> ducting a quasi-judicial hearing, can dispense with no essen-
> tial element of a fair trial: (1) The party whose rights are
> being determined must be given the opportunity to offer
> evidence, cross-examine adverse witnesses, inspect
> documents, and offer evidence in explanation and rebuttal; (2)
> absent stipulations or waiver such a board may not base find-
> ings as to the existence or nonexistence of crucial facts upon
> unsworn statements . . . and (3) crucial findings of fact which
> are 'unsupported by competent, material and substantial

evidence in view of the entire record as submitted' cannot stand." *Humble Oil*, 284 N.C. at 470, 202 S.E. 2d at 137.

[4]   Petitioners finally allege that § 25-19(A)(2)(c)1 of the Winston-Salem Code is unconstitutional. The section provides that "[i]f the Board of Adjustment *denies* the application for the issuance of a special use permit, it *shall enter the reasons for denial in the minutes of the meeting at which the action was taken. . . .*" [Emphasis added.] It does not so require such extra reasons, over and above the regular findings, when the Board approves an application. Petitioners maintain that this distinction discriminates against persons aggrieved by the grant of another's application in violation of equal protection and due process guarantees. They point to language, previously cited, from *Humble Oil* to support them: "in *allowing or denying* the application, it [the Board] state the basic facts on which it relied with sufficient specificity to in-from the parties, as well as the court, what induced its decision." [Emphasis added] 284 N.C. 471, 202 S.E. 2d at 138. If such additional statement is *essential* to support a grant as well as a denial of a special use permit, then the Winston-Salem ordinance is fatally defective. However, such statement must be deemed essential only to the denial of a special use permit. *Humble Oil* makes clear, in another passage previously cited, that a *prima facie* case for a special use permit is made upon the applicant's evidence that the findings laid out by the ordinance may be affirmatively found. The findings, found in the affirmative, are clearly adequate "basic facts." In other words, what a reviewing court, and the parties involved, are assured under *Humble Oil* is *information* sufficient to understand the Board's action. In the case *sub judice*, where the special use permit was approved, the parties involved and the reviewing courts can be quite clear as to why the Board approved the grant. *All* of the required findings were affirmative, otherwise the permit would not have issued. If the permit had been denied, the Board would have had to have specified which of the findings was negative. Nothing more is required by *Humble Oil* than that the parties have sufficient information to understand the Board's actions. It does not require that parties aggrieved by a grant be treated as are parties aggrieved by a denial. Petitioners make no allegation that any other procedure mandated by *Humble Oil* or by the Winston-Salem ordinance was violated in any way, nor do they make serious allegation that the

Board otherwise abused its discretion except insofar as it held against them.

The order appealed from is

Affirmed.

Judges MORRIS and WEBB concur.