Robinhood Trails Neighbors v. Board of Adjustment

resulting in the deaths. The State having carried its burden, the trial judge properly submitted the evidence to the jury. At that point, "it is *solely* for the jury to determine whether the facts taken singly or in combination satisfy them beyond a reasonable doubt that the defendant is in fact guilty." *State v. Smith, supra*, 40 N.C. App. at 79, 252 S.E. 2d at 540. We further hold that a rational trier of fact could reasonably have found the defendant committed the crimes charged. *See Jackson v. Virginia*, --- U.S. ---, 61 L.Ed. 2d 560, 99 S.Ct. 2781 (1979); *State v. Barbour*, 43 N.C. App. 143, 258 S.E. 2d 475 (1979).

Defendant argues, in addition, that the trial court erred in its charge to the jury with respect to the effect convictions of criminal offenses were to have upon the truthfulness of the various witnesses. Upon a review of the judge's charge in this case, we conclude that the judge accurately explained to the jury the purposes for which such evidence was to be considered, as well as explaining the role of the jury in deliberating upon the evidence. Defendant's objection to the trial court's instruction is thereby overruled.

We conclude that in the trial below, the judge committed

No error.

Judges PARKER and MARTIN (Robert M.) concur.

---

ROBINHOOD TRAILS NEIGHBORS, AN UNINCORPORATED ASSOCIATION, A. THOMAS OLIVE AND WANDA T. REMY, PETITIONERS v. THE WINSTON-SALEM ZONING BOARD OF ADJUSTMENT, DAISY REED, R. J. CHILDRESS, NORMAN SWAIN, GRACE ANDRONICA, CLARK BROWN, MARCUS SHELTON, JAMES R. LANCASTER, R. W. SCOGGIN AND AMOS E. SPEAS, RESPONDENTS

No. 7921SC215

(Filed 15 January 1980)

1. **Administrative Law § 4; Attorneys at Law § 4— testimony of attorney while representing client before administrative board**

While it was not improper for a local administrative board to consider the testimony of an attorney given while he was representing a client in a matter

before the board, attorneys are strongly discouraged from serving as both a witness and an advocate, even before local administrative boards, unless the exceptions in DR 5-101(B) or other compelling circumstances exist.

2. **Attorneys at Law § 4; Municipal Corporations § 30.6— board of adjustment—evidence by unsworn attorney**

Appellants were not prejudiced because a board of adjustment, in making its findings of fact in granting a special use permit for off-street parking, considered a slide presentation of the site by appellants' attorney who was not sworn as a witness where the board made a visit to the site; furthermore, appellants cannot complain because the board considered information which their own attorney presented to the board.

3. **Municipal Corporations § 30.6— special use permit—sufficiency of evidence**

There was substantial competent evidence in the record to support a decision by a board of adjustment to grant a special use permit for off-street parking on property in a residential zone.

4. **Municipal Corporations § 30.6— special use permit for parking—abutting lot—meaning of "lot"**

Where a provision of a zoning ordinance permitted a special use permit for use of a lot zoned residential as a parking area for a business only if said lot abuts for a distance of not less than 25 feet upon the lot to which such parking would be an accessory, "lot" means a zoning lot consisting of land to be developed under one ownership rather than a tax map lot, and two tax map lots, one containing a store and the other a parking area, were properly considered together as a single "lot" for the purpose of determining whether a third tax map lot met the requirements of the statute for a parking special use permit.

5. **Municipal Corporations § 30.6— special use permit—approval of site grading plan—substantial compliance**

There was substantial compliance with a provision of a city ordinance prohibiting the issuance of a special use permit until the superintendent of inspections approved any site plan required by the soil erosion and sedimentation control ordinance where persons in charge of erosion control were familiar with grading activity on the land in question and had suggested changes which were adopted by the owner.

APPEAL by plaintiffs from *Wood, Judge*. Judgment entered 19 October 1978 in Superior Court, FORSYTH County. Heard in the Court of Appeals 23 October 1979.

Appellant, Robinhood Trails Neighbors, is an unincorporated association comprised of residents in approximately 80 households in the Robinhood Trails subdivision. Appellants Olive and Remy are citizens and residents of Winston-Salem. The appellants challenge the issuance of an off-street parking special use permit

issued to Mt. Tabor Food Market, Inc., by the Winston-Salem Board of Adjustment (hereinafter referred to as the "Board"), an administrative and quasi-judicial body created pursuant to N.C. Gen. Stat. § 160A-388 and Section 25-17 of the Winston-Salem Zoning Ordinance.

On 2 February 1978 the Mt. Tabor Food Market, Inc. (hereinafter "Mt. Tabor"), requested an appearance before the Board in order to request the following special use permit:

> "To permit the . . . use of the property . . . to establish off-street parking on residential property abutting business property located on the north side of Robinhood Road, approximately one quarter mile west of Whitaker Road. The property is zoned R-4. Lots 48E, eastern portion of 48F, Block 3410, being all of that lot designed (*sic*) as Lots 48E and 48F, Block 3410, Forsyth County tax maps, except that portion of Lot 48F for which Special Use Permit for off-street parking was granted May 4, 1967."

On 4 May 1978 Mt. Tabor had its hearing before the Board at which time Mt. Tabor proffered the sworn testimony of its counsel, William S. Mitchell. Mr. Mitchell presented 1,071 signatures of persons approving the proposed use, as well as previously filed or to-be-filed letters of approval from the owners to the north and east of the subject property. Also, Mr. Mitchell explained that the property partly across Robinhood Road was already in business use by Sherwood Plaza and that a building and loan association was immediately across the road. Mr. Mitchell further stated that additional parking would promote safety because many customers would have to park across Robinhood Road and walk across the road to get their groceries. Market values, stated Mitchell, would not be decreased by granting the permit because the front of the subject lot would remain wooded, the land to the east was wooded, the land across the street next to Sherwood Plaza was wooded and there were no houses close enough to be affected by the parking area. Finally, the parking lot would be in harmony with the Mt. Tabor store next to the lot and Sherwood Plaza across the street from the lot.

At the hearing plaintiffs' attorney, Thomas Ross, who did not take an oath, gave a slide presentation of the proposed parking lot as well as the surrounding area. Mr. Ross indicated that, with

the exception of Sherwood Park, Mt. Tabor and the savings and loan, all of the surrounding property was zoned residential. Mr. Ross also submitted affidavits stating that the existing parking space for Mt. Tabor was 30% empty each time it had been monitored and that the persons occupying five houses on the other side of Robinhood Road opposed the special permit. Other exhibits introduced included applications for a building permit for additions to the Mt. Tabor food market, an application for a development permit by the Winston-Salem Soil Erosion and Sedimentation Control Ordinance, and tax maps for the lots in question. Finally, Mr. Ross presented, for a standing count, twenty-one persons who were in opposition to the proposed permit.

The Board approved the special use permit in an open executive session. Appellants petitioned to superior court for judicial review. A writ of certiorari was granted on 28 September 1978. After reviewing the entire record of the proceeding and considering oral arguments, Superior Court Judge William Wood held that the Board acted properly in granting the special use permit. Appellants excepted only to the judgment entered by the trial court.

*Craige, Brawley, Liipfert & Ross by C. Thomas Ross for plaintiff appellants.*

*City Attorney Ronald G. Seeber and Womble, Carlyle, Sandridge & Rice by Roddey M. Ligon, Jr., for defendant appellees.*

CLARK, Judge.

### I. Rule 10(a)

We are aware that Rule 10(a) of the Rules of Appellate Procedure limits appellate consideration to exceptions set out in the record. However, Rule 10(b)(1) provides an exception for matters where objection was noted at the trial level. It is now clear that formal rules of evidence do not apply to municipal administrative boards, *Humble Oil and Refining Company v. Board of Aldermen*, 284 N.C. 458, 470, 202 S.E. 2d 129, 137 (1974), and each of the items we have discussed was argued by counsel to the local board as being improper. Counsel could not except to the findings of fact because none were made. In the interest of justice, and for

the purpose of giving some guidance to local boards, we have chosen to not strictly enforce Rule 10(a) in this case.

## II. Substantial Evidence

[1] Appellants first contend that William Mitchell, attorney for Mt. Tabor Food Market, Inc., breached Disciplinary Rule DR 5-102 of the North Carolina Code of Professional Responsibility by presenting sworn testimony as a witness while at the same time representing his client. For this reason, appellants argue that the testimony of Mr. Mitchell was not competent and cannot serve as a basis for finding there was "substantial evidence" to support the special use permit.

We deal with the propriety of the professional conduct of Mr. Mitchell to the extent that it is relevant to the issues involved in this case. A panel of this Court, in *Mebane v. Iowa Mutual Insurance Company*, 28 N.C. App. 27, 220 S.E. 2d 623 (1975), held that an attorney who testifies on behalf of his client is a competent witness; nonetheless, because of the policy behind the Professional Ethical Considerations, the panel refused to overturn a trial court ruling that the attorney's evidence was inadmissible. The instant case is distinguishable from *Mebane* in at least two respects: (1) the local administrative board in this case chose to consider the testimony of the attorney; and (2) the formal rules of evidence applicable to the General Court of Justice, even if they were controlled by the Code of Professional Responsibility, are not binding on local municipal administrative agencies. *Humble Oil, supra.* Consequently, we do not find a compelling reason to extend existing law by holding that the evidence presented by an attorney who testifies while representing a client before a local administrative board may not be considered by the local administrative board. We do, however, for the reasons set forth in Ethical Consideration 5-9, strongly discourage attorneys from serving as both a witness and an advocate, even if before local administrative boards, unless the exceptions in DR 5-101(B) or other compelling circumstances exist:

> "EC 5-9. Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effec-

tive witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another; while that of a witness is to state facts objectively."

[2] Appellants' next objection is that the Board of Adjustment could not make a finding based upon the showing of slides by appellants' attorney because appellants' attorney was not sworn in before the Board. Appellants' position is consistent to a limited degree with the holding of our Supreme Court in *Jarrell v. Board of Adjustment*, 258 N.C. 476, 481, 128 S.E. 2d 879 (1963), that a board of adjustment may not base critical findings of fact on unsworn statements. However, since the Board made its own site visit we can see no prejudice to the appellants. There is no indication that every critical factor which might have been shown in the slides could not also have been seen during the visit to the site by the Board. In addition, we note that the requirement of sworn testimony and affidavits is to establish credibility and it would be inappropriate except in limited circumstances for the administrative board or a court to deny, at appellants' request, consideration of the very information which appellants' attorney presented to the board or court. The underlying principles of estoppel as well as the credibility safeguards which inhere in the hearsay exceptions for declarations against interest and admissions by party opponents would all support this result.

[3] Having rejected these arguments by the appellants, we now hold that there was substantial competent evidence in the record to support the Board's decision to grant the special use permit. Stated differently, there was "sufficient information to understand the Board's action. [*Humble Oil, supra*] does not require that parties aggrieved by a grant be treated as parties aggrieved by a denial." *Washington Park Neighborhood Association v. Winston-Salem Board of Adjustment*, 35 N.C. App. 449, 457, 241 S.E. 2d 872, 877, cert. denied, 295 N.C. 91, 244 S.E. 2d 263 (1978).

### III. Definition of Lot

[4] Appellants' next major contention is that the Board of Adjustment did not follow the law of North Carolina or Winston-Salem. In this regard appellants argue that the Board did not comply with the following underlined language in section 25-7.F of the Winston-Salem Zoning Ordinance:

> "A special use permit may be granted for the use of a lot in a residential zone as a parking area to serve a business or industrial, or multi-family use located in a district in which such use is permitted, *but only if said lot abuts for a distance of not less than twenty-five (25) feet upon the lot to which such parking would be an accessory. . . .*" (Emphasis supplied.)

To support their argument, appellants present tax maps to show that Tax Map Lot 47-B, Tax Map Lot 48-F, and Tax Map Lot 48-E are located, from left to right respectively, on the north side of Robinhood Road. All three lots are owned either legally or beneficially by Mt. Tabor Food Market. The food market is located on Lot 47-B and is zoned for business. Lot 48-F is zoned residential but a special use permit for parking for approximately one-half of Lot 48-F was granted in 1967. Lot 48-E, which is also zoned residential only abuts Lot 48-F, not Lot 47-B where the food market is located. Appellants argue that a special use permit cannot be granted for Lot 48-E because it does not abut Lot 47-B, the lot for which such parking would be accessory. To allow a special permit for Lot 48-E, appellants argue, would be to use "tacking" to effectively rezone Lot 48-F as business property.

The critical factor in resolving this aspect of the dispute is the definition of "lot" within the meaning of section 25-7.F of the Ordinance, and on this point the Ordinance is no model of clarity. Appellants argue that "lot" means a tax map lot, and relies on the following definition in section 25-3.B:

> "Lot. A parcel of land designated by number or other symbol as a part of a legally approved and recorded subdivision, or as described by metes and bounds."

However, upon analyzing the context of subsection 25-7.F, we find that "lot" means "zoning lot" as also defined in section 25-3.B:

"Lot, Zoning. A parcel of land which is indicated by the owner, at the time of application for a building or zoning permit, as being that land which he proposes to develop under one ownership."

Under the latter definition, Tax Map Lots 48-E and 48-F would be considered a single lot to be developed under one ownership for zoning purposes. It is apparent, given this definition, that the Ordinance contemplated "tacking" for the limited purpose of allowing a business to expand its parking capacity on adjacent land which it owns even though such adjacent land is zoned residential, provided, of course, that all of the requirements of a special use permit, set out in subsection 25-19, are met. Such a provision constitutes an exception to the zoning ordinance and is not "rezoning." We also note that zoning district lines do not have to coincide with property lines, *Helms v. City of Charlotte*, 255 N.C. 647, 653, 122 S.E. 2d 817 (1961); and we are not, therefore, inclined to apply a definition to "lot" which is limited to a tax map lot where the governing body of the municipality has not made this designation.

[5] Finally, appellants argue that the Board should not have granted a special use permit because no permit for grading activity was issued by the Superintendent of Inspections pursuant to section 7-19.a. of the Winston-Salem Soil Erosion and Sedimentation Control Ordinance, set forth herein:

"a. Any person engaged in land-disturbing activities who fails to file a plan in accordance with this ordinance, or who conducts a land-disturbing activity except in accordance with provisions of an approved development plan shall be deemed in violation of this ordinance.

* * * *

c. None of the following documents or permits shall be issued or granted under applicable zoning regulations or other laws and ordinances unless and until a plan, as required by this ordinance, has been approved by the superintendent of inspections:

(1) Zoning Permit

(2) Special-Use Permit

(3) Variance Permit

(4) Temporary Permit."

We agree with appellant that the Board of Adjustment may not issue a permit until an "approval" under section 7-19.c. of the Winston-Salem Erosion and Sedimentation Control Ordinance has been made by the superintendent of inspections. No formal permit, however, is required under section 7-19.c. and the attorney for the appellants admitted in the hearing that the Board was not required to have the stamp of a registered engineer on grading plans. In addition, the evidence in the record shows that this provision was complied with in substance, even if not in the most desirable technical form. The record of the hearing indicates that the Board was aware that the people in charge of erosion control were "familiar with everything that went on on [the] lot and the owner of the lot at the suggestion of our people made certain construction changes at our suggestion such as a construction of a burm [*sic*] on the lot and that burm [*sic*] was so shaped that drainage from the site runs into a catch basi[n] and pipe that runs down through the fill to the toe of the fill."

The grant of the special use permit by the Winston-Salem Zoning Board of Adjustment and the decision of the Superior Court below are

Affirmed.

Judges HEDRICK and MARTIN (Harry C.) concur.