CAROLINA HOLDINGS, INC., PETITIONER v. HOUSING APPEALS BOARD OF
THE CITY OF CHARLOTTE, RESPONDENT

No. COA01-460

(Filed 2 April 2002)

**1. Open Meetings— housing appeals board—closed session— attorney-client privilege exception**

The trial court did not err in a case seeking the demolition of petitioner's apartment buildings by determining that respondent housing appeals board did not violate the open meeting laws under N.C.G.S. §§ 143-318.9 through 318.18, because: (1) the record shows that the closed sessions during the 12 October 1999 and 11 April 2000 hearings were for the purpose of the board consulting with its attorney on matters within the scope of the attorney-client privilege; and (2) petitioner has failed to show any prejudice by reason of the board meeting in closed session.

**2. Cities and Towns— demolition proceeding—whole record test**

The trial court did not err in a case seeking the demolition of petitioner's apartment buildings by concluding respondent housing appeals board's findings and conclusions concerning housing code violations in petitioner's apartment units were supported by competent evidence in the whole record and are not arbitrary and capricious, because: (1) the evidence before the board showed that the inspector inspected each of the units in June and July 1998 and found violations in every unit; (2) these violations still

existed in October 1999; and (3) the board was presented with estimates of the cost of repairs and the value of the units enabling it to declare that some of the units were deteriorated and needed to be brought up to code while others were dilapidated and needed to be demolished.

**3. Cities and Towns— demolition proceeding—space and use and light and ventilation provisions of housing code—previous failure to cite violations**

The trial court did not err in a case seeking the demolition of petitioner's apartment buildings by applying the space and use and light and ventilation provisions of the housing code for petitioner's apartment units that were originally used as a motel before being converted into apartments even though petitioner contends the application of the code provisions would be an impermissible retroactive application and past code inspectors had failed to cite these violations previously, because: (1) there was no evidence before the board that the code had been retroactively or retrospectively applied; and (2) the doctrine of estoppel will not be applied against a municipality in its governmental, public, or sovereign capacity even though respondent housing appeals board failed to cite these violations in the past.

**4. Cities and Towns— demolition proceeding—reasonable opportunity to conform with housing code**

The trial court did not err in a case seeking the demolition of petitioner's apartment buildings by concluding that respondent housing appeals board gave petitioner a reasonable opportunity to bring its apartment units into conformity with the housing code as required by N.C.G.S. § 160A-443, because petitioner has made no showing that, after notice, it did not have a reasonable opportunity to bring the apartment units into compliance with the housing code.

Appeal by petitioner from judgment entered 13 November 2000, by Judge L. Oliver Noble, Jr. in Mecklenburg County Superior Court. Heard in the Court of Appeals 30 January 2002.

*John E. Hodge, Jr. for petitioner-appellant.*

*Office of the City Attorney, by Senior Assistant City Attorney F. Douglas Canty, for respondent-appellee.*

WALKER, Judge.

Petitioner owns Eastway Apartments in Charlotte. In June and July of 1998, the City of Charlotte inspected all of the apartments in the complex and found violations of the Charlotte Housing Code (the Code) in every apartment. The two most prominent code violations were of sections 11-52 ("space and use") and 11-53 ("light and ventilation"). Scott Edwards, the inspector, noted at least one of these violations in every apartment and provided estimates of the value of each apartment unit and the cost of repair to bring the units into compliance.

The inspector provided notice to petitioner of an opportunity for a hearing regarding the violations. After a hearing, the inspector confirmed the findings of violations and ordered demolition of all of the apartment units. Each order indicated that the affected unit contained specified violations of the Code and that such violations could not be repaired, altered, or improved at a cost of less than 65% of the value of the dwelling.

Petitioner appealed the inspector's demolition order to respondent Housing Appeals Board (the Board). In its appeal to the Board, petitioner contended the following in part:

The property owner contends that the cited code sections are unenforceable because the code was adopted after the construction of these units and their being placed into use.

Furthermore, the Findings of Fact give no compelling government reason why the code can be applied ex post facto. Additionally, each unit cited has been inspected repeatedly without being cited for space and use and/or light and ventilation violations. The units were in compliance when built, in compliance when the code was adopted and remain in compliance. Therefore, the space and use and light and ventilation violations should be struck. Every other violation is minor and will be corrected.

On 9 March 1999, the Board held its first hearing on petitioner's appeal. Officer P.J. Wilson testified about the criminal activity he was investigating which was occurring in the area. The investigation lead him to discover there were code violations at these apartments and he informed the city housing inspectors. Mr. Edwards testified that he had last visited the units on the morning of the hearing. The property appeared the same as before; although, some violations had been cor-

rected. He testified that both "housekeeping" violations and "structural" violations still existed at the time of the hearing.

The "structural" violations included sagging floor joists and sagging header supports, along with the space and use and the light and ventilation violations. Mr. Edwards further testified, "These uniits [sic] have been there for forty years and they have all passed all the inspections for these forty years." The "housekeeping" violations included trash, abandoned vehicles, furniture, and other items around the exterior of the units.

When the hearing concluded, the Board had not reached a decision on the matter. Instead, it requested the petitioner to continue to repair all of the violations except the space and use and light and ventilation violations. The Board also determined that it would reconvene and have the parties report back on their progress.

A second hearing was held on 13 April 1999. Mr. Edwards testified that he had visited the property again. He found that the property had "improved somewhat since the last time we was [sic] here." He testified that the abandoned vehicles were gone, "the trash is being disposed back into the trash receptacles again," and other exterior "housekeeping" violations were being remedied. After discussing possible new ownership of the units and the effect of that on the decision of the Board, the Board moved that "the present owner bring into compliance, excluding light ventilation and space, all the necessary repairs by July 15th and that all light ventilation and space requirement to code be completed by December 15th."

At a third hearing on 10 August 1999, Carl Wiggins, a representative of the petitioner, testified that he had been working daily on repairing the violations. However, Mr. Edwards reported there were still code violations, excluding the space and use and light and ventilation violations. The Board did not take any formal action at the hearing.

Another hearing was held on 12 October 1999. Mr. Wiggins reported that the potential buyer could not purchase the units because his source of money "had gone away." Also, there were still code violations, excluding space and use and light and ventilation violations. The Board went into closed session to consult with its attorney. At the conclusion of the session, the Board voted to order petitioner to demolish the units within ninety days. The Board did not make any written findings nor conclusions in support of its decision.

The Board met again on 11 April 2000 after providing notice to the petitioner. During a closed session, the Board's attorney informed it that the 12 October 1999 decision to demolish all of the property was in error. Back in open session, the Board passed an amended decision with the following findings in part:

. . .

2. Each of the apartments is used for human habitation and each apartment contains violations of the Code. The Code violations that each apartment contains are as listed on Exhibit A to the code enforcement findings of fact for the apartment.

3. The apartments are part of a complex of buildings that was built and used originally as a motel; consequently, some of the apartments do not contain enough square footage or window space to meet the space and use or light and ventilation requirements of Sections 11-52 and 11-53 of the Code, as indicated on the inspection checklists and lists of violations. The Board did not receive any evidence that the apartments complied with the Code at the time of construction or at any other time.

4. At some point prior to the inspections that led to the present Code enforcement proceedings against the apartments, a code inspector inspected the apartments but failed to cite the violations of Sections 11-52 and 11-53 of the Code.

5. Each of the apartments listed below in this Paragraph 5 is deteriorated, in that it can be repaired, altered, or improved to comply with the Code at a cost that does not exceed 65 percent of the value of the apartment:

[Thirty-nine of the apartment units were in this category].

6. Each of the apartments listed below in this Paragraph 6 is dilapidated, in that it cannot be repaired, altered, or improved to comply with the Code at a cost that does not exceed 65 percent of the value of the apartment:

[Fifteen of the apartment units were in this category].

The Board concluded the following in part:

1. Each of the apartments is unfit for human habitation, in that the apartment contains conditions that violate one or more of the minimum standards of fitness established by the Code.

2. All of the apartments listed in Findings of Fact No. 5 should be repaired, altered, or improved so as to comply with the minimum standards of fitness established by the Code.

3. All of the apartments listed in Findings of Fact No. 6 should be demolished. Because such apartments were converted unlawfully from motel units to dwellings, justice does not require a waiver of the space and use or light and ventilation requirements with respect to the apartments.

4. The failure of an inspector to cite the space and use and light and ventilation violations in a previous inspection does not operate as a perpetual waiver of those requirements. The failure of the apartments to meet those requirements is an ongoing violation of law that can be remedied through this proceeding.

The Board then ordered the demolition of the fifteen dilapidated apartment units and the repair of the thirty-nine deteriorated apartment units within sixty days. Petitioner appealed the Board's decision to the superior court. After a hearing on 28 September 2000, the trial court made findings and conclusions and affirmed the Board's decision of 11 April 2000.

While the review provisions of the North Carolina Administrative Procedure Act are not applicable to this appeal, "the principles that provision embodies are highly pertinent." *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 625, 265 S.E.2d 379, 382, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980). The scope of review of a trial court reviewing a decision by a board sitting as a quasi-judicial body includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of [the Board] are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Id.* at 626, 165 S.E.2d at 383.

**[1]** Petitioner first contends that the Board made its decisions during closed sessions in violation of the open meeting laws, N.C. Gen. Stat. §§ 143-318.9 through 318.18 (1999), and that the trial court erred in determining otherwise. The trial court found, "The record indicates that the respondent issued both its original decision and its amended decision in open meetings." Petitioner contends that the use of the language "the record indicates" shows that the trial court used an improper standard of review. The proper standard of review of this issue is *de novo*. Thus, our review of the trial court's order is *de novo* as to the issue of violation of the open meeting laws.

N.C. Gen. Stat. § 143-318.10(a) states, "Except as provided in G.S. 143-318.11, . . ., each official meeting of a public body shall be open to the public, and any person is entitled to attend such a meeting." N.C. Gen. Stat. § 143-318.11(a) states the following in part:

> It is the policy of this State that closed sessions shall be held only when required to permit a public body to act in the public inter-est as permitted in this section. A public body may hold a closed session and exclude the public only when a closed session is required:

> . . .

> (3) To consult with an attorney employed or retained by the pub-lic body in order to preserve the attorney-client privilege between the attorney and the public body, which privilege is hereby acknowledged. General policy matters may not be discussed in a closed session and nothing herein shall be construed to permit a public body to close a meeting that otherwise would be open merely because an attorney employed or retained by the public body is a participant.

While there is a public policy against closed sessions, discussions between a board and its attorney regarding matters traditionally falling within the attorney-client privilege must be allowed to be con-ducted in closed sessions to preserve the attorney-client privilege, including consulting on constitutional and legal challenges which might result from actions being taken or considered by a board. *Multimedia Publ'g of N.C., Inc. v. Henderson County*, 136 N.C. App. 567, 575, 525 S.E.2d 786, 792, *disc. rev. denied*, 351 N.C. 474, 543 S.E.2d 492 (2000).

The record shows that the closed sessions during the 12 October 1999 and 11 April 2000 hearings were for the purpose of the Board

consulting with its attorney on matters within the scope of the attorney-client privilege. Further, petitioner has failed to show any prejudice by reason of the Board meeting in closed session. Thus, this assignment of error is overruled.

[2] Petitioner further contends that the findings and conclusions of the Board are not supported by competent evidence in the whole record and are arbitrary and capricious. The trial court concluded the following in part:

> 3. In light of the petitioner's claim that the respondent['s] decision is not supported by substantial, competent evidence and is arbitrary and capricious, the court must employ the "whole record" test, which requires the court to examine all competent evidence that was presented to the respondent to determine if the respondent's decision is supported by competent evidence.

> 4. The respondent's findings of fact are supported by substantial, competent evidence contained in the record. The respondent's conclusions of law are supported by the findings of fact.

The evidence before the Board showed that the inspector inspected each of the units in June and July of 1998 and found code violations in every unit, including space and use and/or light and ventilation violations. These violations still existed in October of 1999. The Board was presented with estimates of the cost of repairs and the value of the units. Based on the evidence, the Board determined that in thirty-nine of the units, the cost of repairs would be less than sixty-five percent of the total value. Thus, these units were declared deteriorated and were ordered to be brought up to code. In fifteen of the units, the Board found that the cost of repairs would exceed sixty-five percent of the value of the units. Thus, these units were declared dilapidated and were ordered demolished. We find there was competent evidence to support the findings which, in turn, support the conclusions of the Board.

[3] Petitioner next contends that the Board erred in applying the space and use and light and ventilation provisions of the Code. The Board found that the units were originally used as a motel before being converted into apartments. The Board also found that past code inspectors had failed to cite the space and use and light and ventilation violations. Petitioner claims that the Code provisions should not be applied because to do so would be a retroactive or retrospective application and thus constitutionally impermissible.

CAROLINA HOLDINGS, INC. v. HOUSING APPEALS BD. OF CHARLOTTE

[149 N.C. App. 579 (2002)]

"The application of a statute is deemed 'retroactive' or 'retrospective' when its operative effect is to alter the legal consequences of conduct or transactions completed prior to its enactment." *Gardner v. Gardner*, 300 N.C. 715, 718, 268 S.E.2d 468, 471 (1980). However, a statute is not unconstitutional simply because it is applied to facts which were in existence before its enactment. *Wood v. Stevens & Co.*, 297 N.C. 636, 650, 256 S.E.2d 692, 701 (1979). "Instead, a statute is impermissibly retrospective only when it interferes with rights which had vested or liabilities which had accrued prior to its passage." *Id.*

Here, the original Code became effective in 1961 with amendments through 1989. While the record shows that the units were built as motels in the late 1940s and subsequently converted into apartment units, there was no evidence presented as to when this conversion took place. Further, petitioner did not acquire the units until 1992. During the Board hearings, Mr. Wiggins testified that "between the time we made the offer on it and the time that it closed, we learned that it was not in compliance with the City Ordinance." Thus, we agree that the trial court properly determined there was no evidence before the Board that the Code had been retroactively or retrospectively applied.

Petitioner also claims that because the space and use and light and ventilation violations had existed for years without citation, the Board is estopped from now enforcing these provisions of the Code. However, "[i]t is generally recognized in North Carolina that the doctrine of estoppel will not be applied against a municipality in its governmental, public or sovereign capacity." *Sykes v. Belk*, 278 N.C. 106, 121, 179 S.E.2d 439, 448 (1971). Our Supreme Court held in *Helms v. Charlotte*, 255 N.C. 647, 122 S.E.2d 817 (1961), that "[a] municipality cannot be estopped to enforce a zoning ordinance against a violator by the conduct of its officials in encouraging or permitting the violation." *Helms*, 255 N.C. at 652, 122 S.E.2d at 821. *See also, Blackwelder v. City of Winston-Salem*, 332 N.C. 319, 324, 420 S.E.2d 432, 436 (1992). Just as in *Helms*, we find that the Board is not estopped from enforcing the Code against petitioner by the failure to cite these violations in the past.

[4] Petitioner finally claims the Board did not give it a reasonable opportunity to bring the units into conformity with the Code. N.C. Gen. Stat. § 160A-443, which grants a city the authority to create housing codes, requires that "[n]o such ordinance shall be adopted to require demolition of a dwelling until the owner has first been given

a reasonable opportunity to bring it into conformity with the housing code." N.C. Gen. Stat. § 160A-443(5). Here, the trial court concluded the following:

> 9. The housing code contains a provision (Section 11-28(e)(3)) that grants to a dwelling owner the right to repair a dwelling that is subject to a demolition order, provided that the owner gives to the code official, within 10 days from the date of the demolition order, written notice of intent to repair. The record contains no indication that the petitioner attempted to exercise its rights under this provision.

Petitioner has made no showing that, after notice, it did not have a reasonable opportunity to bring the units into compliance with the Code.

In conclusion, we find the trial court properly determined that the Board did not violate the open meeting laws. Further, the trial court's findings and conclusions were supported by competent evidence. Thus, the judgment of the trial court which upheld the order of the Board is

Affirmed.

Judges McGEE and BIGGS concur.