MOORES v. GREENSBORO MINIMUM HOUS. STANDARDS COMM'N

[198 N.C. App. 384 (2009)]

ROBERT N. MOORES, Petitioner v. GREENSBORO MINIMUM HOUSING
STANDARDS COMMISSION and CITY OF GREENSBORO, Respondents

No. COA08-1557

(Filed 21 July 2009)

**Cities and Towns— housing commission—authority to order repair or demolishment of house**

The superior court erred by ruling that the Greensboro Minimum Standards Housing Commission was not the "governing body" authorized to order petitioner's residence repaired or demolished because: (1) the Housing Commission is expressly empowered to make such orders under the Greensboro Minimum Housing Code; and (2) our appellate courts have previously adjudicated cases in which a commission, not the City Council, has given the final order to condemn or demolish property. N.C.G.S. § 160A-443.

Appeal by Respondents from order entered 13 October 2008 by Judge Lindsay R. Davis, Jr. in Superior Court, Guilford County. Heard in the Court of Appeals 19 May 2009.

*Smith, James, Rowlett & Cohen, LLP, by Norman B. Smith, for Petitioner.*

*Greensboro City Attorney's Office, by Becky Jo Peterson-Buie, for Respondents.*

WYNN, Judge.

"[T]he governing body of the city is . . . authorized to adopt and enforce ordinances relating to dwellings within the city's territorial jurisdiction that are unfit for human habitation."[1] In this appeal, Respondents Greensboro Minimum Housing Standards Commission ("the Housing Commission") and City of Greensboro argue the Superior Court erred by ruling that the Housing Commission is not the "governing body" authorized to order Petitioner Robert Moore's residence repaired or demolished. Because the Housing Commission is expressly empowered to make such orders under the Greensboro Minimum Housing Code, we reverse the Superior Court's order.

Petitioner owns a single-family residence at 5002 Beale Avenue in Greensboro. A building inspector inspected the residence on 12 June

1. N.C. Gen. Stat. § 160A-443 (2007).

and 22 September 2006 for compliance with Greensboro's minimum housing standards. The inspector found multiple violations during the inspections, including rotted roof sheathing; unsanitary ceiling, fixtures and walls; untreated deteriorative surface; leaky and loose water closet; and weather permeable wall and exterior siding. On 12, 19 and 26 April 2007, the inspector gave notice of a hearing on the housing violations. The inspector held a hearing on 3 May 2007 and determined the house was unfit for human habitation.

On 4 May 2007, the inspector ordered the house repaired or demolished by 4 June 2007. Petitioner did not comply with this order. In compliance with the Greensboro Minimum Housing Code, the inspector sought review of his order and a mandate from the Housing Commission to proceed. Petitioner was given notice of a hearing before the Housing Commission set for 10 July 2007.

Petitioner appeared at the 10 July hearing and asserted that he was making efforts to comply with the inspector's order, including erection of a five foot fence at his residence. Ultimately, at Petitioner's request, the Housing Commission continued the hearing to 14 August 2007 to allow Petitioner time to obtain counsel. At the 14 August hearing, the case was again continued to 11 September 2007 to allow Petitioner's counsel to become familiar with the case.

At the September hearing, Petitioner gave testimony about measures he was taking to bring the residence into compliance with the Housing Code. He testified that he had erected a five foot fence around the perimeter of the property, replaced a broken pane of glass in a storm window, and replaced rotting fascia board. Petitioner opined that the inspector's list of violations affected between 1% to 10% of the house's total value. Moreover, Petitioner's position was that the listed violations did not threaten health or safety, but rather were routine maintenance shortcomings.

However, Petitioner admitted at the September hearing that several listed violations continued to exist. The violations included a faulty ceiling where Petitioner cut a hole to access plumbing; exposed wiring; insect and rodent issues; a loose handrail; rotting roof sheathing; dirty and/or unpainted fixtures, floors, walls and other surfaces; and a loose water closet. The building inspector expounded on the house's sanitary condition, stating: "It doesn't appear that anything has been cleaned up in quite a long time. . . . I believe at a certain point, on sanitary conditions, qualifies as one (1) of the individual violations that, all by itself, is adequate to . . . support the order to con-

demn the house, and I believe this house is to that point." On the other hand, Petitioner took the position that there should be no order to repair or demolish because conditions at the residence posed no threat to the public, health, safety or welfare. Thereafter, the Housing Commission voted 4-0 to uphold the inspector's order to repair or demolish the residence, and allowed Petitioner until 10 December 2007 to comply.

Petitioner filed a petition for writ of certiorari for the Superior Court to review the Housing Commission's order. The Superior Court granted the writ of certiorari, and after hearings, entered an order on 13 October 2008 prohibiting the Housing Commission and Greensboro from demolishing Petitioner's property and remanding to the Housing Commission. Specifically, the Superior Court ruled that the Housing Commission was not the "governing body" under N.C. Gen. Stat. § 160A-443(5), and therefore, had "no authority to cause the repair or demolition" of Petitioner's property. The Housing Commission and Greensboro appeal from that order, arguing the Superior Court erred by concluding that the Housing Commission lacked authority to order Petitioner's residence repaired or demolished.

The Superior Court's functions when reviewing the decision of a board sitting as a quasi-judicial body include: (1) reviewing the record for errors in law; (2) ensuring that the board followed procedures specified by statute and ordinance; (3) ensuring that the board protected the petitioner's due process rights; (4) ensuring that the board's decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensuring that the board's decision is not arbitrary and capricious. *Carolina Holdings, Inc. v. Housing Appeals Bd. of City of Charlotte*, 149 N.C. App. 579, 584, 561 S.E.2d 541, 544, *disc. review denied*, 356 N.C. 298, 570 S.E.2d 499 (2002). We review the Superior Court's determination that the Housing Commission committed an error of law *de novo*. *See id.* at 585, 561 S.E.2d at 544-45.

Here, the Superior Court ruled that the Housing Commission is not the "governing body" authorized to order Petitioner's property repaired or demolished under section 160A-443(5). Relevant portions of that statute provide:

Upon the adoption of an ordinance finding that dwelling conditions of the character described in G.S. 160A-441 exist within a city, the governing body of the city is hereby authorized to adopt

and enforce ordinances relating to dwellings within the city's territorial jurisdiction that are unfit for human habitation. These ordinances shall include the following provisions:

. . .

(3)  That if, after notice and hearing, the public officer determines that the dwelling under consideration is unfit for human habitation, he shall state in writing his findings of fact in support of that determination and shall issue and cause to be served upon the owner thereof an order,

. . .

(4)  That, if the owner fails to comply with an order to repair, alter or improve or to vacate and close the dwelling, the public officer may cause the dwelling to be repaired, altered or improved or to be vacated and closed . . .

(5)  That, if the owner fails to comply with an order to remove or demolish the dwelling, the public officer may cause such dwelling to be removed or demolished. *The duties of the public officer set forth in subdivisions (4) and (5) shall not be exercised until the governing body shall have by ordinance ordered the public officer to proceed to effectuate the purpose of this Article with respect to the particular property or properties which the public officer shall have found to be unfit for human habitation and which property or properties shall be described in the ordinance.* No such ordinance shall be adopted to require demolition of a dwelling until the owner has first been given a reasonable opportunity to bring it into conformity with the housing code. . . .

N.C. Gen. Stat. § 160A-443 (2007) (emphasis added). "Governing body" is defined in Chapter 160A as the "council, board of commissioners, or other legislative body, charged with governing a city or county." N.C. Gen. Stat. § 160A-442(3).

Additionally, several provisions codified throughout Chapter 160A are significantly deferential to local ordinances. For example, also within Part six, section 160A-450 states:

Nothing in this Part shall be construed to abrogate or impair the powers of the courts or of any department of any city to enforce any provisions of its charter or its ordinances or regulations, nor

to prevent or punish violations thereof; and the powers conferred by this Part shall be in addition and supplemental to the powers conferred by any other law.

N.C. Gen. Stat. § 160A-450 (2007). Likewise, section 160A-3 states:

(a) When a procedure that purports to prescribe all acts necessary for the performance or execution of any power, duty, function, privilege, or immunity is provided by both a general law and a city charter, the two procedures may be used as alternatives, and a city may elect to follow either one.

(b) When a procedure for the performance or execution of any power, duty, function, privilege, or immunity is provided by both a general law and a city charter, but the charter procedure does not purport to contain all acts necessary to carry the power, duty, function, privilege, or immunity into execution, the charter procedure shall be supplemented by the general law procedure; but in case of conflict or inconsistency between the two procedures, the charter procedure shall control.

N.C. Gen. Stat. § 160A-3(a)-(b) (2007). Thus, the General Assembly affords local governments considerable leeway in exercising their police powers to maintain safe and suitable dwellings through their local ordinances. It follows that the Greensboro Minimum Housing Code should dictate the outcome of this case if it is consistent with state law.

Section 11-39 of the Greensboro Minimum Housing Code is a thorough, three-page ordinance governing condemnation procedure. Subsection (d) is the relevant provision in this appeal, and its language is nearly a mirror image of N.C. Gen. Stat. § 160A-443(5). Subsection (d) states:

If the owner fails to comply with an order to repair or, upon his failure to do so, otherwise demolish the building, the inspector may cause such building to be demolished; provided, that *the duties of the inspector with respect to causing the repair, alteration, improvement or demolition set forth in subsections (c) and (d) shall not be exercised until the minimum housing standards commission shall by resolution or other decree order the inspector to proceed to effectuate the purposes of this chapter concerning the particular property or properties which the inspector shall have found to be unfit for human habitation or dangerous,* and which property or properties shall be described

by the resolution or other decree. Such decree shall be recorded in the office of the register of deeds of Guilford County. . . .

Greensboro, N.C., Minimum Housing Code § 11-39(d) (2005). Therefore, under the Greensboro Minimum Housing Code, the Housing Commission is expressly empowered to make the final order or decree directing the building inspector to repair or demolish a building not brought into compliance pursuant to previous order.

Finally, both courts in our Appellate Division have adjudicated cases in which a commission, not the City Council, has given the final order to condemn or demolish property. *See Horton v. Gulledge*, 277 N.C. 353, 177 S.E.2d 885 (1970) (holding that Greensboro Housing Commission could not order property destroyed without giving the owner a reasonable opportunity to remove hazardous conditions threatening public safety and welfare), *overruled on other grounds by State v. Jones*, 305 N.C. 520, 530-31, 290 S.E.2d 675, 681 (1982); *Redevelopment Comm'n of Greensboro v. Johnson*, 129 N.C. App. 630, 632-33, 500 S.E.2d 118, 120 (1998) (Commission not required to articulate its reasons for condemning some but not all property in a given area).

We conclude that the Housing Commission's authority to make the final order to repair or demolish property is expressly provided in the Greensboro Minimum Housing Code, and confirmed by decisions from this Court and our Supreme Court. Accordingly, we must reverse the Superior Court's order.

Reversed.

Judges STROUD and BEASLEY concur.